

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-1435-10

**JESUS E. COSIO, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS HIDALGO COUNTY**

**KEASLER, J., delivered the opinion for a unanimous Court.**

**O P I N I O N**

We hold that the trial judge's instructions to the jury permitted non-unanimous verdicts. There were several instances of sexual criminal conduct that could have satisfied the charged offenses, and the judge failed to instruct the jury that it must be unanimous about which instance of criminal conduct satisfied each charged. But we conclude that Jesus Eduardo Cosio was not egregiously harmed. We therefore reverse and remand this case to the court of appeals for proceedings consistent with this opinion.

## I. Background

Cosio was charged by indictment with several felony offenses stemming from the sexual abuse of his former girlfriend's daughter, C.P. In Count One, the State charged Cosio with aggravated sexual assault of child, alleging that Cosio caused his sexual organ to penetrate C.P.'s mouth on or about July 31, 2004. In Count Two, which included four alternative paragraphs, Cosio was charged with aggravated sexual assault of a child, occurring on or about July 31, 2004. In Count Three, which included one paragraph, Cosio was charged with indecency with a child by contact, alleging that Cosio touched C.P.'s genitals on or about July 31, 2007. And finally, in Count Four, with two alternative paragraphs, Cosio was charged with indecency with a child by contact, occurring on or about July 31, 2007. Cosio pled not guilty and elected to have a jury trial.

During the guilt phase, C.P. testified about the various instances of sexual misconduct:

**The Shower Incident**: When C.P. was seven or eight, she was in the family's only bathroom taking a shower by herself. Cosio came in touched her on her breasts and "private part, mostly everywhere."

**The Bedroom Incident**: About a week after the shower incident, Cosio took C.P. into the bedroom that he shared with C.P.'s mother. Cosio started by touching C.P.'s breasts and whole body and kissing her. Cosio removed C.P.'s underwear. Cosio made her "suck his penis" and then put his penis in her vagina for about three minutes. Cosio stopped because he expected C.P.'s mother to return home.

**The Burger King Incident**: At some unidentified time, Cosio took C.P. to Burger King. Cosio made C.P. "suck his penis" on the way to the restaurant and on the way home.

**The Pornography Incident**: When C.P. was nine or ten, Cosio took C.P. in

the bedroom that he shared with C.P.'s mother and showed her a pornographic movie. Cosio took off C.P.'s clothes forced her to "try" the positions that were shown on the film, including "doggie style." He put his penis in her vagina.

After the close of evidence, Cosio requested that the State elect as to the "counts" that it would proceed under. With respect to Count Two, the State elected to proceed under paragraph three, which alleged that Cosio penetrated C.P.'s sexual organ. And with respect to Count Four, the State elected to proceed under paragraph one, which alleged that Cosio touched C.P.'s genitals. Taken together, the State had to prove the following:

Count One:  On or about July 31, 2004, Cosio caused his sexual organ to penetrate C.P.'s mouth.

Count Two:  On or about July 31, 2004, Cosio caused his sexual organ to penetrate C.P.'s sexual organ.

Count Three: On or about July 31, 2007, Cosio touched C.P.'s genitals.

Count Four:  On or about July 31, 2007, Cosio touched C.P.'s genitals.

The jury charges coincided with the State's election and generally instructed the jury, at the end of each charge, that its verdicts must be unanimous. Cosio did not object to the charges on the basis that they allowed for non-unanimous verdicts.

The jury found Cosio guilty on all counts and sentenced him to twenty-five years' imprisonment on Counts One and Two and ten years' imprisonment on Counts Three and Four, as well as a fine. The imposition of the sentences in Counts Three and Four were suspended, and Cosio was placed on community supervision.

## II.  Court of Appeals

In the Corpus Christi Court of Appeals, Cosio challenged the sufficiency of the evidence and alleged that the jury charges "contained egregious error" because they permitted non-unanimous verdicts.[1] The court of appeals, sitting en banc, held that the evidence was insufficient to support the jury's verdict for one of the convictions for indecency with a child.[2] C.P.'s testimony that Cosio touched her breasts and "whole body" during the bedroom incident when she was seven or eight, in the court's opinion, was "too imprecise for the trier of fact to reasonably infer that Cosio touched her genitals on that occasion."[3]

The court of appeals then held that the charges were erroneous.[4] The evidence showed that there were at least more than one instance of misconduct that supported each count, and the charges did not instruct the jury that it had to be unanimous about which instance constituted the commission of the offenses for purposes of each of the individual counts.[5]

First, regarding Count One, which alleged that Cosio committed aggravated sexual assault of a child by penetrating C.P.'s mouth with his penis on or about July 31, 2004, the

---

[1] *Cosio v. State*, 318 S.W.3d 917, 919, 921 (Tex. App.—Corpus Christi 2010) (en banc).

[2] *Id.* at 921.

[3] *Id.*

[4] *Id.* at 923.

[5] *Id.*

court observed that there were two specific instances of this type misconduct—the bedroom and the Burger King incidents.[6]

Next, with respect to Count Two—which alleged that Cosio committed aggravated sexual assault by penetrating C.P.'s vagina with his penis on or about July 31, 2004—the court of appeals determined that two different incidents supported this alleged offense—the bedroom and pornography incidents.[7]

Finally, regarding the indecency counts—both Counts Three and Four, which alleged that Cosio touched C.P.'s genitals on or about July 31, 2007, respectively—the charges did not differentiate between whether the touching of C.P.'s genitals was done with Cosio's hand or penis.[8] Thus, in total, there were three instances in which Cosio touched C.P.'s genitals: the shower incident, the bedroom incident, and the pornography incident.[9]

The court of appeals then rejected the State's argument that Cosio's failure to request an election as to the specific incident of misconduct that it was relying on for each count waived his complaint on appeal.[10] The court noted that while Cosio complained about

---

[6] *Id.* at 922-23.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 924-26.

unanimity on appeal, his point of error was also based on charge error.[11] Further, the court recognized that at trial, Cosio did not object to the charges on the basis that they allowed for a non-unanimous verdicts.[12] Therefore, the court conducted an egregious harm analysis under *Almanza v. State* and ultimately held that Cosio was egregiously harmed.[13]

Justice Garza dissented and concurred in part. In dissent, Justice Garza claimed that the charges permitted unanimous verdicts[14] and that, even if there was error, Cosio forfeited his jury charge complaint because he failed to request that the State elect as to which incidents of criminal conduct that it wanted to rely upon.[15] Finally, the record did not show egregious harm.[16]

We granted the State's petition for discretionary review to consider the propriety of court of appeals's analysis and decision on the unanimity and charge issues.

### III. Analysis

#### A. Error

We determine first whether the charges were erroneous, by allowing for the possibility

---

[11] *Id.* at 926.

[12] *Id.*

[13] *Id.* at 926-29 (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)).

[14] *Id.* at 929-30 (Garza, J., concurring and dissenting).

[15] *Id.* at 929-33.

[16] *Id.* at 932-33.

of non-unanimous verdicts, as held by the majority of the court of appeals.

Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed.[17] This means that the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged."[18] There are several ways in which non-unanimity issues arise, and in this context, based on our precedent, we have recognized three variations that may result in non-unanimous verdicts as to a particular incident of criminal conduct[19] that comprises the charged offense.[20] Non-unanimity may result in each of these situations when the jury charge fails to properly instruct the jury, based on the indicted offense(s) and specific evidence in the case, that its verdict must be unanimous.

First, non-unanimity may occur when the State presents evidence demonstrating the repetition of the same criminal conduct, but the actual results of the conduct differed.[21] For example, if the State charges the defendant with the theft of one item and the evidence shows that the defendant had in fact stolen two of the same items, the jury's verdict may not be

---

[17] *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) (referring to TEX. CONST. art. V § 13; TEX. CODE CRIM. PROC. arts. 36.29(a), 37.02, 37.03, 45.034-45.36).

[18] *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007).

[19] TEX. PENAL CODE § 1.07(a)(10) (defining conduct as "an act or omission and its accompanying mental state).

[20] *Ngo v. State*, 175 S.W.3d 738, 747 (Tex. Crim. App. 2005).

[21] *Id*.

unanimous as to which of the two items the defendant stole.[22] To ensure a unanimous verdict in this situation, the jury charge would have to make clear that the jury must be unanimous about which of the two items was the subject of the single theft.

Second, non-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions.[23] Each of the multiple incidents individually establishes a different offense[24] or unit of prosecution.[25] The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

And third and finally, non-unanimity may occur when the State charges one offense and presents evidence of an offense, committed at a different time, that violated a different provision of the same criminal statute.[26] To ensure unanimity in this situation, the charge would need to instruct the jury that it has to be unanimous about which statutory provision,

---

[22] *See id.* at 748 n.33 (discussing *Coward v. State*, 7 S.W. 332, 332-33 (Tex. Ct. App. 1888) (the trial judge reversibly erred in failing to identify which cow the State sought to convict the defendant for stealing when the evidence showed that the defendant had taken two cows from the complainant)).

[23] *Id.* (relying, in part, on *Crawford v. State*, 696 S.W.2d 903 (Tex. Crim. App. 1985)).

[24] *Id.*

[25] *See generally Gonzales v. State*, 304 S.W.3d 838, 848 (Tex. Crim. App. 2010) (discussing units of prosecution for double jeopardy purposes).

[26] *Ngo*, 175 S.W.3d at 747-48.

among those available based on the facts, the defendant violated.

The facts here fall within the scope of the second category, and we addressed this situation in *Francis v. State*.[27] There, the State charged Francis with one count of indecency with a child.[28] At trial, the State presented four separate instances of indecency, with each instance occurring on different dates.[29] The State later elected to proceed on two of the instances, one involving the touching of the victim's breasts and one involving the touching of the victim's genitals.[30] Francis requested that the trial judge require the State to elect between the two acts, but the judge denied his request.[31] The judge's proposed charge permitted the jury to convict Francis if it found that he committed either one of the two incidents of indecency by charging the two offenses in the disjunctive.[32] The trial judge overruled Francis's objection to the charge.[33] The jury subsequently found Francis guilty.[34] We held that the charge erroneously permitted the jury to convict Francis on less than a

---

[27] 36 S.W.3d 121 (Tex. Crim. App. 2000) (on reh'g).

[28] *Id.* at 122.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at 122-23.

unanimous verdict.[35] "The breast-touching and genital-touching were two different offenses, and therefore, should not have been charged in the disjunctive."[36]

Our decision in *Ngo v. State*,[37] which addressed the third category described above, is also instructive in judging whether the charges here permitted non-unanimous verdicts. In a single-count indictment, Ngo was charged with credit card abuse.[38] The three paragraphs under the single count alleged three separate acts of credit card abuse: that Ngo stole a credit card; that Ngo received a stolen credit card; and, that Ngo fraudulently presented a credit card to pay for goods and services.[39] The evidence showed that Ngo committed each of the credit-abuse offenses in a different way on separate occasions.[40] Setting out the three acts in the disjunctive, the charge instructed the jury to convict Ngo of one offense of credit card abuse if they found that he committed any of the three separate offenses.[41]

On appeal, when Ngo claimed that the charge permitted a non-unanimous verdict, the State countered that, due to Ngo's failure to request that the State elect as to which offense

---

[35] *Id.* at 124-25.

[36] *Id.* at 125.

[37] 175 S.W.3d at 738.

[38] *Id.* at 741.

[39] *Id.*

[40] *Id.* at 741-42.

[41] *Id.* at 742.

it would rely on for a single conviction, it was permissible to submit the separate offenses in the disjunctive.[42] "Each juror could then decide which of the three acts it thought the State had proven and return a general verdict so long as all of the jurors agreed that he had committed the general offense of credit card abuse."[43]

We disagreed with the State's argument and held: "When the State charges different criminal acts, regardless of whether those acts constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees on the commission of any one of these criminal acts."[44] This means that the jury must agree that the defendant "committed the same, single, specific criminal act."[45] Although the instruction's "boilerplate" section informed the jury that it must be unanimous, the jury could have understood it to mean that they had to be unanimous about the offense in general, not a particular incident comprising the offense.[46]

There are two other relevant cases—*Bates v. State* and *Crawford v. State.* Both cases address election error only, but because the principles involved in unanimity and election overlap in some respects, they are helpful in deciding the propriety of the instructions here.

---

[42] *Id*. at 743.

[43] *Id*.

[44] *Id*. at 744.

[45] *Id*. at 745.

[46] *Id*.

In *Bates*, Bates had intercourse with his step-daughter once or twice a week over a period of two years.[47] The State prosecuted Bates for statutory rape, and the trial judge overruled his objection to the charge on the basis that it failed to limit what one rape incident that the State was relying upon.[48] We held that the judge erred: "where more than one act of intercourse is shown, upon motion of the accused, the state should be required to elect as to which act it will reply upon for a conviction."[49]

Following *Bates*, in *Crawford*, we held that the trial judge erred in denying Crawford's request to have the State elect which act of intercourse it would rely on to convict Crawford where the child-victim had testified about several distinct instances in which she had sex with the defendant.[50] We stated that "there was no 'continuing and intervening' action by [Bates], and these were separate and distinct acts. The State was required to elect as to which act it wished to convict [Bates] on."[51]

Building on this precedent, in *O'Neal v. State*, we held that, upon the defendant's request at the close of the State's case, the State is required to elect which incident of

---

[47] 305 S.W.2d 366, 367-68 (Tex. Crim. App. 1957).

[48] *Id*. at 368.

[49] *Id*.

[50] 696 S.W.2d at 904-07.

[51] *Id*. at 907.

intercourse it will rely on to convict the defendant of one count of sexual assault of a child.[52] Recently, we reaffirmed *O'Neal* in *Phillips v. State*, holding: Upon a timely request from the defense—at the close of the State's case—the State is required to elect as to the specific incident of sexual assault that the State will use to convict.[53]

After reviewing the applicable case law, we conclude that the court of appeals was correct in holding that the charges in this case allowed for the possibility that the jury rendered non-unanimous verdicts. The jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution,[54] committed by Cosio to find him guilty in the three remaining counts upheld by the court of appeals.[55] Further, as in *Ngo*, the standard, perfunctory unanimity instruction at the end of each charge did not rectify the error. The jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses.

The dissent in the court of appeals asserted that charges were specific enough to permit the jury to reach unanimous verdicts.[56] The dissent points to C.P.'s estimates regarding when the incidents occurred and that the order of the charges were in correlation

---

[52] 746 S.W.2d 769, 771-72 (Tex. Crim. App. 1988).

[53] *Phillips v. State*, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006).

[54] *See generally Gonzales*, 304 S.W.3d at 848.

[55] *Phillips*, 193 S.W.3d at 913.

[56] *Cosio*, 318 S.W.3d at 930 (Garza, J., concurring and dissenting).

to the evidence. The dissent, however, is incorrect. The evidence failed to differentiate between the similar, but yet separate, incidents of criminal conduct in relation to the offenses as charged and the alleged on or about dates.

**B. Forfeiture and Harm**

Having concluded that the charges were erroneous, how do we proceed? Our resolution turns on the reconciliation of our election cases with our jury-charge-error jurisprudence when unanimity is at issue.

The State, relying on Justice Garza's dissent, argues that we should not treat Cosio's claim to include jury charge error, but hold instead that Cosio did not preserve any error for us to review. We should, as the dissent maintained, look to the substance of the issue.[57] Cosio's claim "at its core, complains of the trial court's failure to require the State to elect the specific criminal acts that it would rely upon for conviction."[58] And while this failure "did manifest itself in the jury charge," the charge error was secondary to Cosio's failure to request an election.[59] Any other construction would "overly inflate" *Almanza*'s applicability and contradict the *O'Neal* line of cases.[60]

This argument has some intuitive appeal. Why should a defendant be permitted to

---

[57] *Id*. at 931-32.

[58] *Id*. at 932.

[59] *Id*.

[60] *Id*.

claim charge error on appeal based on the possibility that the charge allowed for a non-unanimous verdict when, at trial, the defendant failed to request that the State make an election between incidents that constituted separate offenses?  We answered this question, however, in *Ngo*—"A request for an election . . . is not a prerequisite for implementing Texas' constitutional and statutory requirement of jury unanimity."[61]  Nevertheless, we will further explain the reasoning behind our determination here given the view that the law is in conflict.

A defendant's decision to elect is purely strategic and may be waived or forfeited.  A defendant may choose not to elect so that the State is jeopardy-barred from prosecuting on any of the offenses that were in evidence.[62]  Punishment would then also be limited to the charged offense only, and, given the jeopardy bar, there is no possibility that the defendant would receive an additional stacked sentence, based on any of the offenses in evidence, down the line.  But at the same time, the defendant would need to consider that the State would be permitted to proceed under several incidents of criminal conduct, as opposed to just one (or however many counts the State proceeds on), which may increase the State's chances of obtaining a conviction.  Also, a defendant would not be entitled to a limiting instruction concerning the jury's consideration of extraneous offenses.

---

[61]  175 S.W.3d at 748; *see also Warner v. State*, 245 S.W.3d 458, 465 (Tex. Crim. App. 2008) ("the source of charge error has little relevance to the harmfulness of the error.").

[62]  *Ex parte Pruitt*, 233 S.W.3d 338, 346 (Tex. Crim. App. 2007); *Dixon v. State*, 201 S.W.3d 731, 735 (Tex. Crim. App. 2006).

In *Phillips*, we cited four reasons why a defendant may seek an election:

- to protect the defendant from the admission of extraneous offenses;

- "to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty:"

- to ensure a unanimous verdict; and

- "to give the defendant notice of the particular offense that the State intends to rely upon for prosecution and afford the defendant an opportunity to defend."[63]

There are additional reasons as well. An election limits a defendant's criminal liability at that time and forces the State to prove, beyond a reasonable doubt, the single incident of criminal conduct that it elected to rely upon. A defendant assessing this factor will undoubtedly analyze the strength of the State's evidence. Though a defendant could still be prosecuted, at a later date, for the other offenses that the State did not elect to proceed under, an election may prove to be favorable because the State may be less inclined to pursue another prosecution in light of the additional resources that the State would have to expend. And, if the State did choose to initiate a subsequent prosecution, then a defendant may be in a better position to reach a plea bargain agreement with the some knowledge of the strength of the State's case. Finally, a defendant may be able to obtain a limiting instruction as to the extraneous offenses.

A defendant's decision to elect or not elect is a strategic choice made after weighing

---

[63] 193 S.W.3d at 609-10.

the above considerations. And while an election may ensure jury unanimity, guaranteeing unanimity is ultimately the responsibility of the trial judge because the judge must instruct the jury on the law applicable to the case.[64] The trial judge is therefore obligated to submit a charge that does not allow for the possibility of a non-unanimous verdict. This means that even when the State is not required to elect, the trial judge must craft a charge that ensures that the jury's verdict will be unanimous based on the specific evidence presented in the case. To guarantee unanimity in this context, we have stated that the jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt.[65] Such an instruction should not refer to any specific evidence in the case and should permit the jury to return a general verdict. For double jeopardy purposes, the trial judge's charge will not alter the effect on a defendant who chose not to elect. Because it will be impossible to determine which particular incident of criminal conduct that the jury was unanimous about, the State will be jeopardy-barred from later prosecuting a defendant for any of the offenses presented at trial.

In the court of appeals, Cosio framed his point of error as follows: "The jury charges contain egregious error since they allowed for convictions that were not unanimous." Thus,

---

[64] *See Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998) (Texas Code of Criminal Procedure "Article 36.14 also mandates that a trial court submit a charge setting forth the law 'applicable to the case.'").

[65] *Ngo*, 175 S.W.3d at 748; *Pizzo v. State*, 235 S.W.3d 711, 714-15 (Tex. Crim. App. 2007).

Cosio's point of error included two legally significant components for purposes of our analysis—jury charge error and a state constitutional and statutory unanimity violation. We have held that the constitutional component is subject to the constitutional harm standard under Texas Rule of Appellate Procedure 44.2(a) when it was properly preserved by a timely and specific objection at trial.[66] But when the constitutional issue has not been properly preserved, we turn to our leading case addressing harm when there is charge error. Under *Almanza v. State*, charge error is never forfeitable by a defendant's failure to object at trial.[67] And a defendant's failure to properly object to charge error controls only the type of harm analysis that will be applied.[68] In this case, although Cosio forfeited the constitutional unanimity component of his complaint, his convictions are subject to reversal if the error was "egregious and created such harm that [his] trial was not fair or impartial.[69]

Cosio's general request to have the State elect as to the "counts" did not preserve the criminal conduct constitutional unanimity component of his allegation for appellate review.[70] The request failed to put the State or trial judge on notice that Cosio was demanding that the

---

[66] *Phillips*, 193 S.W.3d at 914, *reaffirmed in Dixon*, 201 S.W.3d at 734.

[67] *Id.*

[68] *Ngo*, 175 S.W.3d at 743.

[69] *Phillips*, 193 S.W.3d at 914.

[70] *See Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) (each of an indictment's counts contain a single offense while a count's paragraphs allege different methods of committing the same offense).

State, due to the numerous instances of sexual criminal conduct presented at trial, choose among the particular incidents that it wanted to rely on to convict Cosio of the four offenses charged. Nor did Cosio object to the charges at the charge conference on the basis that they allowed for non-unanimous verdicts. Because Cosio forfeited his constitution-based jury charge claim, he is not entitled to a harm analysis under Rule 44.2(a). But the charge error must still be reviewed for egregious harm under *Almanza*.

### C. Egregious Harm Evaluation

An egregious harm determination must be based on a finding of actual rather than theoretical harm.[71] For actual harm to be established,[72] the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory."[73] When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) "the state of the evidence[,] including contested issues and the weight of the probative evidence"; (3) the parties' arguments; and (4) all other relevant information in the record.[74]

Beginning with the charges, as stated above, they permitted non-unanimous verdicts based on the evidence presented in the case. Nothing in the charges themselves militates

---

[71] *Ngo*, 175 S.W.3d at 750.

[72] *See Warner*, 245 S.W.3d at 462, 464 (neither party bears the burden in showing harm or egregious harm).

[73] *Almanza*, 686 S.W.2d at 171.

[74] *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

against this conclusion.

Next, we observe that neither of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts.[75] This factor therefore does not weigh in favor of finding egregious harm.

Finally, C.P.'s testimony detailed each of the four incidents and the various separate instances of criminal conduct involved in each incident. Her testimony was not impeached. Cosio's defense was that he did not commit any of the offenses and that there was reasonable doubt as to each of the four incidents because the C.P. was not credible and the practical circumstances surrounding the incidents of criminal conduct did not corroborate C.P.'s testimony. His defense was essentially of the same character and strength across the board. The jury was not persuaded that he did not commit the offenses or that there was any reasonable doubt. Had the jury believed otherwise, they would have acquitted Cosio on all counts. On this record, therefore, it is logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the four incidents.[76] It is thus highly likely that the jury's verdicts (on the three remaining counts not

---

[75] *Compare with Ngo*, 175 S.W.3d at 750-52 (omission of unanimity instruction caused egregious harm when prosecutor and judge both misstated law concerning unanimity on multiple occasions during trial).

[76] *See e.g.*, *Taylor v. State*, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) ("The defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury believed that Appellant sexually assaulted the victim before he turned 17 years old but not after. In this case, the jury either believed Appellant or believed the victim.").

set aside on sufficiency grounds) were, in fact, unanimous.  Accordingly, actual harm has not been shown, and we cannot say that Cosio was denied a fair and impartial trial.

## IV.  Conclusion

The court of appeals correctly held that the charges were erroneous for failing to require unanimous verdicts but erred in concluding that Cosio was egregiously harmed.  We reverse and remand this case to the court of appeals to address Cosio's remaining points of error as they relate to the three convictions not overturned by the court of appeals for insufficient evidence.

DATE DELIVERED: September 14, 2011
PUBLISH