**Opinion filed March 8, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00023-CR

_____

### KENNETH ELWOOD MABES, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 52nd District Court**
**Coryell County, Texas**
**Trial Court Cause No. FAM-10-20214**

### M E M O R A N D U M   O P I N I O N

The jury convicted Kenneth Elwood Mabes, Appellant, of the offense of murder and assessed his punishment at confinement for sixty years and a fine of $7,500. In a single issue on appeal, Appellant complains of error in the jury charge relating to his claim of self-defense. The State failed to file a brief. We affirm.

*Factual Summary*

It was undisputed at trial that Appellant shot and killed David Eric Minney, the boyfriend of Appellant's estranged wife, Donna Gail Mabes (who had changed her name to Donna Gail Minney about a month before the trial). The shooting occurred outside the home where the victim and Donna lived with two of Appellant and Donna's children: a sixteen-year-old daughter

and a fourteen-year-old son.  Visitation between Appellant and his children had become an issue of contention between Appellant and Donna and their teenaged daughter.

Sometime around 9:00 p.m. on December 28, 2009, Appellant arrived to pick up his son, K.C.M., for visitation.  Donna told Appellant to wait at his vehicle while she got K.C.M.  K.C.M. went outside and got in the pickup with Appellant.  Appellant did not leave immediately, and Donna returned to the door when she heard Appellant honking his horn.  She and Appellant discussed when K.C.M. needed to be brought back, and Appellant got angry and started yelling.  According to K.C.M., Appellant and Donna were yelling at each other.  The victim came to the door and told Appellant to leave.  Donna testified that, instead of leaving, Appellant got out of his pickup and walked toward Donna and the victim.  K.C.M. testified that, as Appellant stepped out of his pickup, Appellant said to the victim, "[Y]ou want to go."  As Appellant approached, the victim reached inside the house and picked up a small wooden bat.  An officer later measured the length of the bat to be twenty-two inches long and estimated its weight to be less than one pound.  Appellant started yelling at the victim, saying that the visitation issue was none of the victim's business.  Appellant also repeated a statement that he had made to the victim on a previous occasion, saying: "You f----d up my family.  You mother f----r."  The victim informed Appellant that he was trespassing and that if he did not leave the victim would call 9-1-1.

Appellant returned to his pickup, reached over toward the passenger's side, got back out of his pickup, and walked toward Donna and the victim.  Donna was standing in the doorway, and the victim was standing on the front porch.  As Appellant exited his pickup, he had his hand tucked behind his leg and said, "You want to call 9-1-1 you mother f----r?"  Appellant walked toward the victim and Donna and raised his hand.  Donna saw a gun and screamed, "He's got a gun."  As the victim started pivoting to turn back toward the house, Appellant started shooting, firing consecutive shots. Donna testified that the victim did not in any way attack Appellant, that Appellant was not defending himself, and that Appellant was the aggressor.  K.C.M. likewise testified that the victim did not swing the bat or threaten Appellant, that the victim just wanted Appellant to leave, that Appellant was the aggressor, and that Appellant was walking quickly toward the victim as Appellant began shooting.

Appellant, however, claimed to have acted in self-defense.  Appellant testified that the victim became angry and agitated, held the bat at shoulder height, and made faces at Appellant.  After Appellant told the victim that what was occurring was none of the victim's business, the

victim threatened to kill Appellant and started walking toward Appellant's pickup. Appellant said that he reached for his keys in the console—so he could back out of the driveway—but could not find his keys. When he could not find his keys, Appellant "panicked," reached in the glove box, and grabbed his pistol. We note that this testimony does not comport with that of K.C.M., who testified that, when Appellant returned to the pickup, Appellant took the keys out of the ignition, unlocked the glove compartment, and retrieved the gun from the glove compartment.

Appellant said that he was scared and feared for his life, afraid that the victim would hit Appellant with the bat while he was sitting in his pickup. He got out of his pickup with the pistol, and the victim was "right on" Appellant. Appellant said that he told the victim to calm down and held the pistol out where the victim could see it. Appellant testified that the victim then swung at Appellant with the bat but missed and that, as the victim raised the bat for the second time, Appellant shot the victim in the leg "[j]ust to stop him." Appellant said that the victim kept coming toward him and that Appellant fired five more times, expending all of the bullets in his revolver.

After the shooting, both Appellant and Donna called 9-1-1. Appellant remained at the scene and cooperated with police. The police investigation revealed that there was blood in the area of the porch, not out in the yard. According to expert testimony, based upon the lack of gunshot residue on the victim's shorts, the muzzle of Appellant's revolver was more than four feet from the victim when it was fired at the victim's leg. The victim died as a result of seven gunshot wounds, including two to the head, one to the chest, one to the trunk, one to the right arm, one to the left hand, and one to the right leg.

*Jury Charge Error*

In his sole issue, Appellant complains about the following portion of the jury charge on self-defense: "[I]f you believe beyond a reasonable doubt that the State has proven that the facts giving rise to the presumption of reasonable belief that force was immediately necessary, do not exist, then you will find against the defendant on his plea of self-defense." Appellant asserts that this language was erroneous because the "reasonableness of a self-defense claim is not exclusively decided by the presumption" and because the instruction did not allow the jury to "consider whether or not Appellant's belief that force was immediately necessary" was reasonable absent the presumption.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We must first determine whether error occurred. If so, we must then evaluate whether the error requires reversal. *Id.* at 731–32. The record shows that Appellant did not object or otherwise make the trial court aware of the complaint that he now asserts on appeal. In his brief, Appellant acknowledges the lack of a trial objection and correctly states that, for an unpreserved error in the jury charge to constitute reversible error, it must have resulted in "egregious harm" to Appellant. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). We must determine whether the error was so egregious as to deprive appellant of a fair and impartial trial. *Cartwright v. State*, 833 S.W.2d 134, 136 (Tex. Crim. App. 1992); *Almanza*, 686 S.W.2d at 171. An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). For actual harm, the charge error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.*; *Almanza*, 686 S.W.2d at 172. The degree of harm is determined by considering the charge; the state of the evidence, including contested issues and the weight of the probative evidence; the parties' arguments; and all other relevant information in the record. *Cosio*, 353 S.W.3d at 777.

The trial court's charge reads in relevant part as follows:

V.

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of December, 2009, in Coryell County, Texas, the defendant, KENNETH ELWOOD MABES, did then and there, without justification intentionally or knowingly cause the death of an individual, namely, David Minney, by shooting David Minney, you will find the defendant guilty of murder and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

VI.

Upon the law of self[-]defense you are instructed that a person is justified in using force against another when and to the decree [sic] he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

The use of force against another is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another:

> (1) If the person would be justified in using force against the other; and

> (2) When and to the degree the person reasonably believes the deadly force is immediately necessary;

>> (A) To protect himself against the other's use or attempted use of unlawful deadly force; or

>> (B) To prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

The defendant's belief that the deadly force was immediately necessary is presumed to be reasonable if the defendant:

> (1) Knew or had reason to believe that the person against whom deadly force was used:

>> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

>> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the defendant from the defendant's habitation, vehicle, or place of business or employment; or

>> (C) was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

> (2) the defendant did not provoke the person against whom the force was used; and

> (3) the defendant was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force.

In determining whether an actor reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

"Deadly force" means force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing death or serious bodily injury.

. . . .

The presumption of reasonable belief applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist.

If the State fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, the jury must find that the presumed facts exist.

Even though the jury may find the presumed fact does not exist, the State must prove beyond a reasonable doubt each of the elements of the offense charged.

If the jury has a reasonable doubt as to whether the presumed facts exist, the presumption applies and the jury must consider the presumed fact to exist.

. . . .

You are further instructed, however, that if you believe from the evidence beyond a reasonable doubt that at the time and place in question David Minney was not using or attempting to use unlawful deadly force on the defendant, or *if you believe beyond a reasonable doubt that the State has proven that the facts giving rise to the presumption of reasonable belief that force was immediately necessary, do not exist, then you will find against the defendant on his plea of self-defense*.

Now, therefore, bearing in mind the foregoing definitions, instructions, and presumption, if you believe from the evidence beyond a reasonable doubt that on or about the 28th day of December, 2009, in Coryell County, Texas, the defendant, KENNETH ELWOOD MABES, did then and there, intentionally or knowingly cause the death of an individual, namely, David Minney, by shooting David Minney, as alleged in the indictment; but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed, or is presumed to have reasonably believed as viewed from his standpoint alone that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by the said David Minney you will acquit the defendant and say by your verdict "Not Guilty" (emphasis added).

Appellant's contention is that the italicized portion of the jury charge[1] was erroneous because the "reasonableness of a self-defense claim is not exclusively decided by the presumption" and because the instruction did not allow the jury to consider whether, absent the presumption,

[1]We note that the paragraph containing the complained-of instruction tracked Section 106.8A of the Criminal Forms and Trial Manual of the Texas Practice Series. 8 MICHAEL J. MCCORMICK ET AL., TEXAS PRACTICE SERIES: CRIMINAL FORMS AND TRIAL MANUAL § 106.8A (11th ed.) (self-defense—converse on presumption of reasonable belief).

Appellant's belief was reasonable. We agree with Appellant that the reasonableness of a defendant's belief that deadly force was immediately necessary to protect himself is not limited to situations in which the presumption of reasonableness applies. A defendant's belief may be reasonable absent the presumption.

The same argument made by Appellant in this appeal was made in *Gonzalez v. State*, No. 08-11-00147-CR, 2012 WL 4101900 (Tex. App.—El Paso Sept. 19, 2012, no pet. h.) (not designated for publication). In that case, the El Paso court assumed, without deciding, that the charge was erroneous and addressed the issue of harm, holding that the defendant failed to demonstrate egregious harm because the jury charge "as a whole" did not misinform the jury on the law of self-defense. 2012 WL 4101900, at *2. We reach the same conclusion in this case.

With the exception of the paragraph about which Appellant complains, the jury charge tracked the language of the applicable statutes and was otherwise correct regarding the law of self-defense. *See* TEX. PENAL CODE ANN. §§ 9.01, 9.31, 9.32 (West 2011). In the application paragraph that immediately followed the complained-of instruction, the trial court correctly applied the law to the facts by instructing the jury to find Appellant "Not Guilty" if it found or had a reasonable doubt that Appellant, as viewed from his standpoint, "*reasonably believed*, *or* is presumed to have reasonably believed*" (emphasis added) that deadly force was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by the victim. The jury was also instructed in the first paragraph set out above to find Appellant guilty only if it found beyond a reasonable doubt that he acted "without justification." Immediately following that paragraph, the trial court informed the jury that a person is "justified" in using force against another person when and to the degree he "reasonably believes" such force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

Furthermore, the state of the evidence does not weigh in Appellant's favor when considering egregious harm. With respect to the issue of self-defense, Appellant's version of the events surrounding his shooting of the victim was contradicted by the other witnesses and by the physical evidence. In addition to the evidence set out above, there were other witnesses who contradicted Appellant's version. There was also testimony that Appellant had been employed by the Texas Department of Criminal Justice for over nine years and, as part of that employment, had been trained in the use of force, firearms, and defensive tactics.

During his argument to the jury, defense counsel argued that the presumption applied because the victim was attempting to enter Appellant's vehicle. He also argued in general terms regarding Appellant's reasonable belief that deadly force was necessary. The prosecutor argued that, based upon the evidence, Appellant was not acting in self-defense. However, the prosecutor did not address the presumption of reasonable belief or the converse of that presumption and did not point out or rely upon the objectionable portion of the jury charge.

*Conclusion*

After reviewing the entire jury charge; the state of the evidence, including the contested issues and the weight of the probative evidence; the arguments of counsel; and other relevant information, we conclude that the complained-of error in the jury charge was not so egregious as to deny Appellant a fair and impartial trial. Appellant's sole issue is overruled.

The judgment of the trial court is affirmed.


MIKE WILLSON

JUSTICE


March 8, 2013

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.