

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00073-CR

ROBERT LARRY LODGE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Randall County, Texas
Trial Court No. 22,315-A, Honorable Dan L. Schaap, Presiding

August 27, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant Robert Larry Lodge appeals from his conviction for the offense of arson[1] and the resulting sentence of fifteen years of imprisonment. Through one issue, Lodge contends the trial court erred by providing an improper charge to the jury. We will affirm.

---

[1] TEX. PENAL CODE ANN. § 28.02(a)(2)(A) (West 2012).

## Background

Because Lodge does not challenge the sufficiency of the evidence to support his conviction, we will relate only those facts necessary to an understanding of his appellate issue.

Lodge was accused of setting fire to the Amarillo residence of Heather, his former girlfriend. The two dated for three years, and Lodge lived in the home with Heather for six months prior to the fire. The home had a security system with monitors for motion and smoke; Lodge knew the security code. He moved out of the home in February 2011 after Heather ended their relationship. Lodge admitted he was "beside himself" over the breakup and sought to learn about Heather's new boyfriend by driving by the home and sometimes parking near it. The fire occurred about two weeks after he moved out.

A fire investigator testified Lodge told him he went to the residence between 6:00 and 6:30 the morning of the fire to see if the new boyfriend's vehicle was there, found it was not there but stayed in the area of the residence for some thirty minutes. Lodge was driving a pickup truck bearing the name of his lawn care company. Other witnesses testified to seeing the truck near Heather's home at earlier times that morning. Heather testified she left her home at 7:13 to take her daughter to school early. She then drove to a coffee shop. While waiting in the drive-up line for her coffee, she received two calls from her security company, one at 7:22 and the second at 7:28. She headed directly home and received a phone call and a text message from appellant on her way.

Evidence showed a motion detector was triggered at 7:16 that morning and a fire alarm was triggered at 7:19. Neighbors testified they saw fire trucks between 7:20 and 7:30.

Fire investigator testimony showed the fire was intentionally set. It burned at four separate locations inside the home, and fuel cans and used oil cans were found. Forensic tests also showed the presence of gasoline on samples of items collected from the home. Many parts of the home smelled of gasoline and Heather's daughter testified she did not smell gasoline before leaving home that morning. Lodge could not be excluded as the contributor of DNA found on items the testimony associated with the fire, including a gas can handle and latex gloves.

Lodge again arrived at the home shortly after the fire was contained, expressing concern about Heather's safety. He told inconsistent stories to law enforcement and others after the fire.

Lodge did not testify during the guilt-innocence stage of trial, but his defense denied he was the person who set the fire. He refuted the State's evidence, specifically contesting the DNA evidence the State argued showed he set the fire. He also presented an alibi witness who testified he saw Lodge's personal vehicle, a yellow Hummer, at a convenience store around 7:25 or 7:30 that morning, and saw the vehicle at another location five to ten minutes later.

Analysis

The indictment charged Lodge with "intentionally and knowingly start[ing] a fire by igniting a flammable substance, with intent to damage and destroy a habitation generally located at [an address in] Amarillo, Randall County, Texas, knowing that said habitation was within the limits of an incorporated city, namely, Amarillo, Texas."

The abstract portion of the court's charge contained the full Penal Code definitions[2] of the intentional and knowing culpable mental states:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application paragraph read:

> Now bearing in mind the foregoing instructions, if you unanimously believe from the evidence beyond a reasonable doubt, that the defendant, ROBERT LARRY LODGE, on or about the 28th day of February, 2011, in the County of Randall, and State of Texas, as alleged in the indictment, did then and there intentionally or knowingly start a fire by igniting a flammable substance, with intent to damage or destroy a habitation generally located at [an address] in Amarillo, Randall County, Texas, knowing that said habitation was within the limits of an incorporated city, namely, Amarillo, Texas, you will find the defendant guilty of the offense of Arson and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

---

[2] TEX. PENAL CODE ANN. § 6.03(a), (b) (West 2012).

Through his single appellate issue, Lodge contends the inclusion of definitions referring to the result of conduct was error because, he posits, the offense of arson is a pure nature-of-conduct offense. Lodge argues that the references to result of conduct in the definition section of the charge caused the jury to become so focused on the result of the conduct that it was led to convict him on weak circumstantial evidence he was actually the person who set the fire.

The State responds with the assertion that arson contains components of both nature-of-conduct and result-of-conduct offenses. Both parties rely on *Beltran v. State.* 593 S.W.2d 688 (Tex. Crim. App. 1980); *see Hughes v. State,* 897 S.W.2d 285, 295 n.14 (Tex. Crim. App. 1994), *cert. denied,* 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *Cook v. State,* 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (discussing conduct elements). We find it unnecessary to resolve the parties' disagreement because, even if we assume the charge contained the error Lodge asserts, we agree with the State's further contention that the error was harmless.

The degree of harm required for reversal depends on whether jury-charge error was preserved in the trial court. When the defendant fails to object at trial, as here, reversal is required only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (*quoting Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

An egregious harm determination must be based on a finding of actual rather than theoretical harm. *Cosio v. State,* 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Ngo v. State,* 175 S.W.3d 738, 750 (Tex. Crim. App. 2005). For actual harm to be established, the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Cosio,* 353 S.W.3d at 777, *citing Almanza*, 686 S.W.2d at 171. When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) "the state of the evidence[,] including contested issues and the weight of the probative evidence"; (3) the parties' arguments; and (4) all other relevant information in the record. *Cosio,* 353 S.W.3d at 777. When the error involves a misstatement of the required culpable mental state, we may also "consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes,* 897 S.W.2d at 296.

Having reviewed the entire record, we find the most significant factor in the assessment of harm from the error Lodge sees to be the simple fact that the state of mind of the person who set the fire was not an issue at trial. The State's evidentiary contention that the fire was intentionally set went entirely undisputed, at trial and now on appeal. Nor does the trial contain any hint of dispute over whether the person who set the fire intended thereby to damage or destroy the residence, or whether that person knew the residence was located within Amarillo's city limits. Neither the State's case nor Lodge's defense focused at all on the mental state of the person setting the fire.

At trial, as noted, investigators testified to aspects of the fire, including the presence of "pour patterns," that lead them to conclude the "fire was intentionally set." Cross-examination of the investigators focused on the asserted lack of evidence

6

identifying Lodge as the person who set the fire. Indeed, Lodge's entire defense, both at trial and on appeal, was that he was not the person who set the fire. His effort at trial was to dispute and minimize the probative value of evidence his DNA was found on some items, and to identify discrepancies in the State's time line, arguing he could not have set the fire. And as noted, he presented an alibi witness. Review of the contested issues at trial effectively negates a conclusion that references in the charge to the intended result of the conduct of the person who set the fire affected "the very basis of the case," or "vitally affect[ed] a defensive theory." *Cosio,* 353 S.W.3d at 777. Given the state of the evidence and the contested issues, we are unable to see how any asserted focus by the jury on the result of the conduct of the fire-setter increased the likelihood of Lodge's conviction or harmed his defense.

Acceptance of Lodge's contention also would require that we find the jury ignored the charge's application paragraph. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (jury presumed to follow court's instructions as given). The application paragraph required for guilt that the jury find Lodge "did then and there intentionally or knowingly start a fire by igniting a flammable substance . . . ." Thus, again assuming the presence of the result of conduct in the definitions of "intentionally" and "knowingly" was error, the application paragraph pointed the jury to what Lodge says was the appropriate part of the definitions, that referring to the nature of his conduct. This factor as well strongly weighs against a finding of egregious harm. *See Collins v. State,* No. 09-04-407-CR, 2005 Tex. App. LEXIS 9639, at *18-19 (Tex. App.—Beaumont Nov. 16,

7

2005, no pet.), *citing Hughes*, 897 S.W.2d at 296 (finding application paragraph limited jury's consideration of overly-broad definitions).[3]

To those factors we add our finding that nothing in the arguments of counsel emphasized the result-of-conduct language in the definitions, or espoused a theory of the evidence in which the actor's state of mind would have been important. Lodge even points out that during *voir dire*, the State noted the nature-of-conduct aspect of arson when the prosecutor stated, "It's purely a property related crime. To start a fire, to cause an explosion with intent to destroy or damage a habitation, knowing that it is within the city limits of a town or city. That's it. Pretty simple." The parties' arguments were consistent with the disputed issue at trial, that is, the identity of Lodge as the person who committed the arson. This factor also weighs in favor of finding no egregious harm.

Accordingly, we find no egregious harm resulted from the court's failure to limit the definitions in the charge to the jury. We resolve Lodge's sole issue against him and affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.

---

[3] *See also Carr v. State,* No. 14-09-00322-CR, 2010 Tex. App. LEXIS 5619, at *22-23 (Tex. App.—Houston [14th Dist.] July 20, 2010, pet. ref'd) (mem. op., not designated for publication) (discussing purposes of abstract and application portions of jury charge).