

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00779-CR

Anthony Newton **HARRIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR9455
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  July 25, 2018

AFFIRMED

A Bexar County, Texas jury found Appellant Anthony Newton Harris guilty of felony assault—family violence and the trial court subsequently assessed punishment at five-years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $1,500.00 fine. On appeal, Harris contends the evidence was legally insufficient to support the jury's finding that he committed felony assault—family violence. We affirm the trial court's judgment.

## LEGAL SUFFICIENCY OF THE EVIDENCE

**A.      Standard of Review**

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *accord Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence . . . ." *Adames*, 353 S.W.3d at 860; *accord Gear*, 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id*. (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it alone resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.— Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

**B.**      **Arguments of the Parties**

Harris contends no rational trier of fact could have found beyond a reasonable doubt that Harris assaulted Patina Pryor. The State counters Harris's argument relies on reweighing Pryor's credibility based on alleged inconsistencies, and under the legal sufficiency review standard, an appellate court is not permitted to reassess a witness's credibility.

**C.**      **Felony Assault—Family Violence**

Pursuant to the indictment and the charge of the court, the State was required to prove the following:

> [O]n or about the 9th Day of September, 2013, in Bexar County, Texas, the defendant, Anthony Newton Harris, did intentionally, knowingly, or recklessly cause bodily injury to Patina Pryor, a member of Anthony Newton Harris' family, household, or a person with whom Anthony Newton Harris has or has had a dating relationship, by pushing Patina Pryor with the hand of Anthony Newton Harris or by grabbing Patina Pryor with the hand of Anthony Newton Harris;
>
> And, before the commission of the offense alleged above, on the 22nd day of June, 2005, in Cause No. 869814, in Bexar County, Texas, Anthony Newton Harris was convicted of the offense of Assault Bodily Injury—Married, an offense against a member of Anthony Newton Harris' family, household, or a person with whom Anthony Newton Harris has or has had a dating relationship;

*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2018). Harris does not challenge the sufficiency of the evidence of the prior conviction or that he was in a relationship with Patina Pryor. We therefore limit our review of the evidence pertaining to the elements of the alleged assault on September 9, 2013, against Patina Pryor. *See id*. § 22.01(a)(1) (requiring "intentionally, knowingly, or recklessly caus[ing] bodily injury to another" to commit offense).

"'Bodily injury' means physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(8). This definition encompasses even relatively minor physical contact if it constitutes more than offensive touching. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). Direct evidence that a victim suffered pain is sufficient to support a finding of

bodily injury. *Id.* A jury may further infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and everyday occurrences that cause pain. *See Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).

## D. Evidence at Trial

### 1. Patina Pryor

Pryor testified she met Harris in late 2012; they had a lot in common and were inseparable. By the beginning of 2013, she and Harris were engaged. On September 9, 2013, Pryor came home after an overnight shift and Harris was already asleep. She woke up around 2:15 p.m. and Harris's cellphone was ringing. Pryor answered the cellphone and a female asked for Harris. Pryor testified the woman identified herself as "Classy," and told Pryor she was Harris's girlfriend. Pryor testified "I got upset. And I went and threw the phone." The cell phone hit the headboard, but it did not hit Harris. When Harris inquired what was wrong, Pryor told him that his girlfriend wanted to talk to him. Harris said, "nothing's going on. Nothing's going on." Pryor testified that she announced she was leaving for work and Harris "jumped up out of the bed right then and there and that's when he put his hands around my throat." She continued that Harris "charged at me and put me up against my door to my bedroom."

Pryor grabbed a trashcan trying to use it against Harris, but the trash just spilled and went everywhere. "And that's when he picked up the trash, threw me on the bed and was holding me down stuffing trash in my mouth at the time." Pryor testified she was able to free herself. Harris tried to hit her with a porcelain dove. She was finally able to find her keys and get to work. Pryor testified she left work early and called one of her guy friends to go to her house with her to pack Harris's bags so she could make him leave.

The next afternoon, while she was at the house, Harris showed up. He was banging on the front door and on the windows. Pryor testified he turned the power off to the house. He told her

that he just wanted his ring back and Pryor told him that if he would back away from the door, she would give him the ring. But Harris must have heard her friend in the house and just started yelling, "you're already in there screwing some other guy." Pryor's friend told her that this was between her and Harris and left.

Pryor testified that Harris started hitting her and she was yelling at him to get out of her house. She was hoping her neighbors would hear, but no one came. Harris wanted to know if Pryor was having sex with her friend and Harris became physical. She was trying to get away from him, but he was trying to lift up her dress. Harris then pushed Pryor into the bedroom and onto the bed and grabbed the porcelain dove that was next to her bed. Pryor realized she was confused earlier in her testimony and the incident with the dove happened the second day and not on the first day. Pryor testified Harris's "demeanor like totally changed. It looked like—his pupils were dilated. Looked like he was on something. Like I said, I don't even know where he came from the day I came home from work. . . . It looked like he was really, really angry."

Pryor testified she was just trying to calm Harris down. He went into the kitchen and grabbed a knife and she grabbed a crystal ashtray to defend herself. She put down the ashtray and tried to leave the house. But Harris grabbed her by the arm and "slung" her back on the couch. When she tried to get up, he continued to push her down. Eventually she was able to make it out the front door.

Pryor testified that over the two days, he grabbed her by her arms, wrists, and around her neck. Harris also pushed her multiple times. As a result, she suffered bruises on her left wrist area. Pryor authenticated pictures of her injuries, including a broken blood vessel in her right eye.

### 2. *Anthony Harris*

Harris testified that when Pryor came home from work, he and his brother were asleep on the couch and Pryor was mad because she did not know him. Contrary to Pryor's testimony, Harris

asserted the incident occurred on a Saturday, not in the middle of the week. Harris was adamant that Pryor was not telling the truth. "The case that she's talking about, that didn't go down like that."

> She was mad at my brother because he was there. But she didn't know who he was. And I was trying to explain to her. But she was telling him he need to get out of her house and I was telling her, let me—you walking up on him and him not—he's not mad, but you in his face. He's happy to see you because I've been talking about you. Do you understand what I'm saying? So in the process of her telling him to leave, I was going to leave with him. She didn't want me to leave.
>
> So as I was walking out the door she's pulling on my shirt. When I—I grabbed her hand like what, you know, I'm saying, hey stop. She was making a scene, basically. And that's what I didn't want. Me and my brother we were just going to leave.

Harris testified that Pryor called him to come get his stuff and they did separate for a bit. But he and Pryor got back together and he moved back into her house. Harris testified she never threw his cellphone. Harris's brother had his cellphone when Pryor grabbed it, jumped in the car, and locked herself in the car. Pryor then scrolled through his text messages and the more she read, the madder she became. But he left. Harris testified there was nothing he could do about the phone at that point. Later that night, Pryor called Harris and told him to come and get his clothes and he did. Pryor eventually reconciled with his ex-wife. He did not know until November of 2015, over two years later, when he was arrested following a traffic ticket, that Pryor had pressed charges.

### E. Analysis

Harris's sufficiency challenge amounts to an attack on Pryor's credibility. Although some inconsistencies may have existed in Pryor's accounts of the incident and the extent of her injuries, it was the jury's duty to resolve any conflicts in the evidence. *See Linney v. State*, 401 S.W.3d 764, 772 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd) ("[C]redibility of both the complainant and the defendant is a central, often dispositive issue in . . . 'he said, she said' trials."). Here, the

jury chose to believe Pryor's version of events over Harris's. *See Cosio v. State*, 353 S.W.3d 766, 777–78 (Tex. Crim. App. 2011) (concluding the jury was not persuaded by defendant's denials because if they had been, they would have acquitted him). This court will defer to the jury's "responsibility . . . to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Balderas v. State*, 517 S.W.756, 766 (Tex. Crim. App. 2016) (quoting *Hooper*, 214 S.W.3d at 13). Thus, Harris's claims that Pryor's version of events does not make sense play no part in our sufficiency review. *See Balderas*, 517 S.W.3d at 766.

Pryor testified that Harris assaulted her, grabbed her wrists and arm, pushed her, and choked her. She testified that Harris's actions caused her pain. *See Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding the victim's testimony alone, if believed, is legally sufficient to support a conviction). Viewing the evidence in the light most favorable to the verdict, the jury could have found the essential elements of assault beyond a reasonable doubt. *See Adames*, 353 S.W.3d at 860; *Gear*, 340 S.W.3d at 746. Accordingly, we overrule Harris's sole issue on appeal.

Patricia O. Alvarez, Justice

Do not publish