**Affirmed; Opinion Filed June 29, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00525-CR

**ANGEL TOVAR, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1700026-V**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Stoddart

Angel Tovar was indicted for capital murder. A jury convicted him of the lesser-included

offense of murdering John Flatt, and sentenced him to life in prison. In five issues, appellant

argues: (1) the evidence is insufficient to support the conviction; (2) the jury charge did not

distinctly set forth the law applicable to the facts of the case; (3) the capital murder statute is

unconstitutional as applied; (4) the trial court erred by failing to incorporate the manner and means

alleged in the indictment in the jury charge; and (5) the trial court erred by approving the State's

evidence of prior bad acts. We affirm the trial court's judgment.

FACTUAL BACKGROUND

Johnny Ehrich, John Flatt, Elisha Cox, and appellant lived in a house rented by Cox. The three men were friends who spent a lot of time together, often smoking marijuana and methamphetamine. Appellant, a drug dealer, provided drugs to Ehrich, Flatt, and Cox.

In January 2012, appellant and Flatt were arrested during a traffic stop because they both had outstanding warrants. The police recovered a "large amount" of methamphetamine and a pistol from the car. Appellant subsequently told Ehrich he thought Flatt set him up to be arrested. A few weeks later, appellant reiterated his concern about Flatt to Ehrich.

Early in the morning of May 2, 2012, Cox, Flatt, Ehrich, and appellant were in their shared house. Cox was asleep in her room while the men smoked marijuana and methamphetamine in a living room. Ehrich was playing games on a phone and Flatt was on a couch. Ehrich heard a gunshot and, when he looked up, saw Flatt "slunched" over and appellant holding a gun pointed at Flatt. Flatt was "screaming, crying out. . . . You shot me. You shot me. You shot me." Appellant picked up a second gun and shot Flatt again. Appellant also pointed the gun at Ehrich and told him not to say anything or appellant would shoot Ehrich too.

Cox was awakened by three loud pops. When she opened her bedroom door to investigate, she encountered appellant standing outside. He told her to "shut up and go back to your room." Cox testified: "the look on his face told me it wasn't good. And if I would have went further [sic], I hate to say but I feel like I would have died. I was going to die." Although she saw appellant with a gun in the past, Cox did not see him holding a gun that night. She followed appellant's instructions and went back to bed where she eventually fell asleep.

Appellant told Ehrich to move Flatt's body into a second living area before the two men went to a nearby convenience store where they bought trash bags and two sodas. When they returned to the house, appellant explained to Ehrich they were going to drag the body into the

laundry room where they would "chop the body up and put it in plastic bags." They used a saw to dismember the body and placed the body parts in plastic bags. Appellant instructed Ehrich to separate the hands and head, which were placed in a bucket. When they finished, they loaded the bags into the back of appellant's truck, which was parked next to the back door. The bucket holding the hands and head remained in the laundry room.

The truck was inoperable because it needed a new starter. By the time Ehrich repaired the truck, the sun was up so appellant and Ehrich left the dismembered body in the back of the truck. They spent the day in the house smoking methamphetamine and cleaning up the large quantity of blood on the floors. Around 10:00 or 11:00 p.m., appellant directed Ehrich to get into the truck with him and drive to a nearby wooded area. They removed the trash bags filled with body parts from the truck and appellant instructed Ehrich to pour gasoline on them. Appellant lit the bags on fire and they left. Ehrich testified that after they returned to the house, "Angel pulled out the meth bong and he started smoking, smoking myself. And then he told me to swear on my grandpa's grave that I would never tell anybody and that he's never been caught with this before and he's done stuff like this and never been caught, ever. And I swore on my grandpa's grave that I wouldn't tell nobody."

A few days later, appellant found Ehrich at a mutual friend's house and told him to get into the truck. Appellant had Ehrich drive to a nearby pond. Appellant retrieved the bucket containing the severed hands and head encased in cement from the back of the truck and threw the bucket into the water.

Detective Esteban Montenegro of the Dallas Police Department received a call on May 5, 2012, about a burned, dismembered body in an open field. When he arrived, he saw the body parts had been wrapped in plastic. The body was decapitated and the hands were not attached to the arms. The police executed a search warrant at the house shared by appellant, Cox, Ehrich, and

Flatt. Although Montenegro expected to find blood in the house, none was found. After interviewing Cox, Montenegro obtained a second search warrant for the house. When the warrant was executed, the laundry room "was processed with a chemical luminescence that reacts with the presence of blood. At that point that room was chemically treated and it reacted and there was [sic] signs of blood all around the room." He further explained: "it was breathtaking the amount of blood that was seen [sic] in that room." The police arrested Ehrich who agreed to cooperate and provided additional information, including the location of Flatt's hands and head. The police subsequently recovered the bucket from the pond. When the police processed appellant's truck, blood was found in the bed and inside of the truck.

Devin Hairston knew appellant for about ten years during which time appellant was in a relationship with Hairston's mother. He testified appellant "always had a gun" with him. Hairston was incarcerated when his mother told him appellant was accused of Flatt's murder. Hairston and appellant were held in the same jail. Appellant told Hairston that Flatt was a confidential informant who talked to the police, leading to appellant's arrest for possession of a controlled substance. Hairston believed this was the reason appellant killed Flatt.

LAW & ANALYSIS

## A. Sufficiency of the Evidence

In his first issue, appellant argues the evidence is insufficient to support the conviction because Ehrich, the State's primary witness, was an accomplice witness and no evidence corroborated his testimony. Under article 38.14 of the Texas Code of Criminal Procedure, a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence connecting the defendant to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14. A challenge to the sufficiency of the evidence corroborating accomplice testimony is not the same as challenging the sufficiency of the evidence supporting the verdict as a whole. *White v. State*,

No. 05-16-01499-CR, 2018 WL 739790, at *1 (Tex. App.—Dallas Feb. 7, 2018, no pet.) (mem. op., not designated for publication) (citing *Cantelon v. State*, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.)).  For corroboration of accomplice testimony, all the law requires is that there be some non-accomplice evidence that tends to connect the accused to the commission of the offense.  *Id.* (citing *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997)).  The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt.  *Id.* (citing *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)).  Furthermore, the non-accomplice evidence need only connect the defendant to the offense, not to every element of the offense.  *Id.* (citing *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007)).  Although mere presence at the scene of the crime is insufficient to corroborate accomplice testimony, proof that the accused was at or near the scene around the time of the offense, when coupled with other suspicious circumstances, may tend to connect the accused to crime so as to furnish sufficient corroboration to support a conviction.  *Id.* (citing *Malone*, 253 S.W.3d at 257).

In addition to Ehrich's testimony, the State presented evidence from Cox that there were three other people in the house on the night of the murder: Ehrich, Flatt, and appellant.  She heard three gun shots and, when she sought to leave her bedroom to see what happened, appellant told her to "shut up and go back to your room."  She had seen him with a gun in the past and "the look on his face told me it wasn't good. And if I would have went further [sic], I hate to say but I feel like I would have died. I was going to die."  The police found evidence of blood in appellant's truck, particularly in the truck bed, as well as a "breathtaking the amount of blood" in the laundry room of the house where appellant lived and the murder occurred.  This evidence is consistent with Ehrich's account of dismembering the body in the laundry room and loading it into the back of appellant's truck.

The non-accomplice evidence shows appellant was known to carry a gun, he was at the house when the murder occurred, and blood was found in his truck and in the laundry room of the house where appellant lived. We conclude the record contains "some non-accomplice evidence that tends to connect the accused to the commission of the offense." *Id.* (citing *Hernandez*, 939 S.W.2d at 178). We overrule appellant's first issue.

## B. Jury Charge

In his second issue, appellant presents two complaints: (1) the trial court erred by charging the jury on capital murder and this error caused egregious harm, and (2) the trial court erred by charging the jury on law of parties. We review alleged jury charge error in two steps. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error exists in the charge. *Id.* Second, if charge error exists, we review the record to determine whether the error caused sufficient harm to warrant reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Where, as here, the defendant did not raise a timely objection to the jury instructions, "reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). Error is egregiously harmful if it "affect[s] the very basis of the case, deprive[s] the defendant of a valuable right, or vitally affect[s] a defensive theory." *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). When analyzing harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Egregious harm is a "high and difficult standard which must be borne out by the trial record." *Young v. State*, 283 S.W.3d 854, 880 (Tex. Crim. App. 2009). The defendant must have suffered "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

Although appellant was indicted for capital murder and the jury was charged on capital murder, including the underlying offense of retaliation, appellant was acquitted of this offense. The jury found appellant guilty of the lesser-included offense of murder. A person commits the offense of capital murder if he commits murder and intentionally or knowingly commits the murder in the course of committing or attempting to commit, among other offenses, the offense of retaliation. TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits retaliation if he "intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a: public servant, witness, prospective witness, informant; or a person who has reported or who the actor knows intends to report the occurrence of a crime." *See id.* at § 36.06(a)(1).

By returning a guilty verdict on the lesser-included offense of murder, the jury impliedly acquitted appellant of the greater offense, capital murder. *See Camacho v. State*, No. 08-06-00090-CR, 2008 WL 882640, at *3 (Tex. App.—El Paso Apr. 3, 2008, no pet.) (not designated for publication) (citing *State v. Restrepo*, 878 S.W. 2d 327, 328 (Tex. App.—Waco 1994, pet. dism'd)). Despite being acquitted of capital murder, appellant argues the trial court erred simply by charging the jury with the greater offense and that error egregiously harmed him because the jury may have been confused or mislead.

If we assume the trial court erred by charging the jury on the law applicable to the case, *see Villarreal v. State*, 286 S.W. 3d 321, 329 (Tex. Crim. App. 2009), we conclude appellant has not shown he was egregiously harmed. Appellant could not have been harmed by the capital murder charge because he was acquitted of that offense. Further, appellant has not shown the jury actually was confused or misled by the capital murder charge. There is no indication in the record that appellant suffered actual harm because the trial court charged the jury on capital murder. *See Cosio*, 353 S.W.3d at 777.

Appellant also argues the trial court erred by charging the jury on the law of parties because it was not included in the indictment. A person may be convicted as a party to an offense if it is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PEN. CODE ANN. § 7.01(a). An indictment need not include the law of parties. *See Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); *see* TEX. PENAL CODE ANN. § 7.01(c) ("[E]ach party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice"). "Regardless of whether [law of parties] is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013). We conclude the trial court did not err by including the law of parties in the jury charge on the basis that it was not included in the indictment.

We overrule appellant's second issue.

In his fourth issue, appellant challenges the jury charge as improperly reducing the State's burden of proof and asserts the State should be required to prove the facts as alleged in the indictment. The State indicted appellant for capital murder, alleging that on or about May 2, 2012, appellant unlawfully and intentionally caused Flatt's death by "SHOOTING THE DECEASED WITH A FIREARM, A DEADLY WEAPON, AND BY CUTTING AND BY STABBING THE DECEASED WITH A SHARP OBJECT, A DEADLY WEAPON, AND BY BURNING THE DECEASED WITH FIRE, A DEADLY WEAPON." Based on the indictment, appellant asserts "the State needed to prove the tripartite description of how death was brought about."

The jury charge allowed the jury to find appellant guilty if it found he unlawfully and intentionally caused Flatt's death "by shooting the deceased with a firearm, a deadly weapon." The jury charge did not require the jury to find Flatt's death was caused by shooting Flatt with a firearm, and stabbing him with a sharp object, and burning him with fire, but appellant asserts it

should have.  Appellant's argument is contrary to case law from the Texas Court of Criminal Appeals.

The State may allege different methods of committing a single offense in an indictment. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App.1991) (indictment alleged two different methods of committing single offense of capital murder).  In homicide cases, which focus on the death of an individual, different legal theories involving the same victim are simply alternate methods of committing the same offense.  *Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008).  In capital murder prosecutions a jury charge may properly instruct, in the disjunctive, different capital murder theories with respect to the same victim.  *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010); *Gamboa v. State*, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009); *Kitchens*, 823 S.W.2d at 258 (When alternate theories of committing the same offense are alleged in the conjunctive in the indictment, the jury may be charged in the disjunctive).  Because the State is not required to prove all theories of committing the same crime as alleged in the indictment, we conclude the jury charge was not erroneous as appellant asserts.  We overrule his fourth issue.

## C.  Constitutionality of the Capital Murder Statute

In his third issue, appellant asserts the capital murder statute, as applied to him, is unconstitutional.  As the State argues, appellant did not raise this complaint at trial.  Under rule of appellate procedure 33.1, an appellant must object at trial and obtain a ruling in order to preserve error on appeal.  TEX. R. APP. P. 33.1(a).  Absent certain exceptions which are not relevant here, this rule applies to objections of a constitutional dimension.  *See Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995); *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994). Because appellant did not assert his constitutional complaint about the capital murder statute as applied to him in the trial court, he failed to preserve this issue for review.  We overrule appellant's third issue.

## D. Prior Bad Acts Evidence

In his fifth issue, appellant argues the trial court committed harmful error by allowing the State to use evidence of prior bad acts. Appellant asserts the State sought to elicit testimony from Cox showing appellant threatened persons in the past and was acting in accordance with his character on May 2, 2012, when he "confronted [her] as she exited her bedroom" and threatened her so that "she should cower in fear of violence or even death." The State asked Cox on redirect whether she had seen appellant "in the past do things that's [sic] not only to you but to others in a threatening manner?" The trial court overruled appellant's objection that the question violated evidentiary rule 404(b). *See* TEX. R. EVID. 404(b). On appeal, appellant argues the trial court's ruling was in error.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, PD-0181-17, 2018 WL 1736689, at *5 (Tex. Crim. App. Apr. 11, 2018) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). The erroneous admission of evidence is non-constitutional error. *Gonzalez*, 2018 WL 1736689, at *8 (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)). Non-constitutional errors are harmful, and thus require reversal, only if they affect an appellant's substantial rights. TEX. R. APP. P. 44.2(b). "[E]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); see also *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting any error was harmless in light of "very similar" evidence admitted without objection). Thus, error in the admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere without objection. *See Leday*, 983 S.W.2d at 717–18.

Appellant makes no argument showing how the alleged erroneous admission of evidence is harmful, and we conclude it was not. Cox testified without objection that she was scared because "Angel, the things I've seen him do and say to people I care about." Additionally, she testified appellant threatened her in the past and he carried a gun. When the State asked whether she had "a strong and healthy fear of what Angel Tovar could do to you or others if he was crossed," she answered affirmatively.

After examining the entire record, we conclude any error in overruling appellant's objection was harmless. Evidence that was very similar to the testimony about which appellant complains was received without objection. Thus, any error in the admission of evidence, was harmless. We overrule appellant's fifth issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170525F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANGEL TOVAR, Appellant

No. 05-17-00525-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1700026-V.
Opinion delivered by Justice Stoddart.
Justices Lang and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of June, 2018.