

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PHILLIP FRIAS, | § | |
| | | No. 08-13-000325-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 171st District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20130D03266) |
| | § | |

## **O P I N I O N**

A jury convicted Phillip Frias of two counts of aggravated sexual assault and one count of aggravated kidnapping.  On appeal, Frias challenges his convictions by arguing that (1) the jury charge egregiously harmed him because it lacked statutory language pertinent to the "without consent" element of the offense of aggravated sexual assault, and (2) that the trial court deprived him of effective assistance of counsel by sustaining the State's objection to his attorney's closing argument.  We affirm.

### **BACKGROUND**

*The offense and investigation*

The complainant in this case, K.N.,[1]  testified at trial to the following:   on January 7, 2012,

---

[1] Since the victim was seventeen years old at the time the alleged offense occurred, we refer to her by her initials.

she traveled by bus to a bus stop near her male friend's apartment in northeast El Paso, Texas, and after walking to her friend's residence, she engaged in protected, consensual sex with him at his residence. At approximately 5:30 p.m., she returned to the bus stop to catch a bus, so she could return to her apartment. While waiting for the bus, a man whom K.N. later identified as Frias approached her and began a conversation with her. Frias and K.N. were alone at the bus stop during this conversation. Frias told K.N. that his name was "Victor Sky," and despite K.N.'s attempts to avoid conversation with him, he kept talking to her. At some point, Frias offered her a ride in his car, which K.N. declined. Frias then left and promptly returned in a vehicle, exited the vehicle, and forced K.N. into the passenger-side door of the vehicle by grabbing her by the neck. Frias drove off with K.N. in the vehicle and asked where she lived. K.N. stated that she lived "downtown," and Frias responded that he had to pick up his girlfriend. K.N. attempted to exit the vehicle, but the passenger-side door was broken, and she could not find the door handle.

Eventually, Frias pulled over in a neighborhood and forced K.N. to get in the backseat by pushing her. He then began to choke K.N., and as a result she became "really scared" and "dizzy." Frias then took off K.N.'s clothes and, despite K.N. telling him to stop, Frias penetrated her vagina and anus with his penis. K.N. testified that Frias threatened that if she made a noise, he would kill her. The incident continued for approximately one hour, and then Frias fell asleep on top of her. K.N. did not attempt to move Frias while he was asleep because she was afraid of waking him up, and that if he did he would have "[done] something to [her.]" Frias woke up after approximately twenty-five minutes, and then again penetrated her vagina and anus with his penis.

---

*See* TEX. R. APP. P. 9.10(a)(3); TEX. CIV. PRAC. & REM. CODE ANN. § 129.001 (the age of majority in Texas is eighteen years).

2

During this second incident, Frias again choked her, and when K.N. attempted to choke him back, Frias told her that he was going to hit her if she did not stop resisting; as a result, K.N. stopped struggling because she "just wanted it to be over." At some point during the sexual encounters, K.N. heard two men outside the vehicle, and Frias told K.N. that they were his friends and that "they were going to come and join him." Nevertheless, nobody ever knocked on the window of the vehicle or attempted to assist K.N., and the two men did not join in the sexual encounters.

After the second incident concluded, Frias told K.N. to put her clothes back on, and then drove her to downtown El Paso near her apartment. Before allowing her to exit the vehicle, Frias took K.N.'s cell phone. After she was dropped off, K.N. ran to her apartment, where she called the police. During this time, K.N. stated that she was "crying," "really mad," and "scared." K.N.'s mother later testified that K.N. did not return home when she was expected, and when she did arrive, she appeared "[v]ery bad," was "crying like a mad person," and had disheveled hair and scratches on her neck. A responding police officer also testified at trial that when he arrived at K.N.'s residence, she appeared disheveled and had redness on her neck and face, swelling on her face, and handprints on her neck.

K.N. was taken to the hospital, where she gave a statement recounting the events to detectives from the El Paso Police Department. K.N. was also examined by a Sexual Assault Nurse Examiner (SANE) to determine whether K.N. had been sexually assaulted. The SANE nurse later testified that K.N. was "tearful" and "scared" during the examination, and she noted injuries she observed on K.N. which were consistent with her recollection of events. A DNA sample was collected from K.N.'s body, which returned a match from CODIS, a national DNA database. A DNA sample later collected from Frias through a buccal swab conducted by police

3

proved to be a match with samples collected from K.N.'s body and clothing.  In a subsequent

photo lineup conducted by detectives, K.N. identified Frias as being the individual who had

intercourse with her on the day of the alleged offense.   The detectives then arrested Frias pursuant

to an arrest warrant.

*The trial*

The State subsequently indicted Frias on two counts of aggravated sexual assault and one

count of aggravated kidnapping.   After the presentation of the parties' cases, the jury was charged

in the following manner:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of January, 2012, in El Paso County, Texas, the defendant, **PHILLIP FRIAS**,
>
> **PARAGRAPH A**
> [Frias] did then and there intentionally or knowing[ly] cause the penetration of the sexual organ of **K.N.** by means of the sexual organ of **PHILLIP FRIAS** without the consent of **K.N.**, by the use of physical force and violence, and the said Defendant did then and there by acts and words in the presence of **K.N.**, threaten to cause the death of **K.N.**,
>
> **OR**
>
> **PARAGRAPH B**
> [Frias] did then and there intentionally or knowingly cause the penetration of the sexual organ of **K.N.** by means of the sexual organ of **PHILLIP FRIAS** without the consent of **K.N.**, by the use of physical force and violence, and the said Defendant did then and there by acts and words place **K.N.**, in fear that death, would be imminently inflicted on **K.N.**, then you will find the defendant, **PHILLIP FRIAS**, GUILTY of AGGRAVATED SEXUAL ASSAULT, as alleged in Count I of the indictment . . . .

Like Count Two of the indictment, the jury charge associated with Count Two contained identical

language to that of Count One, except Count Two directed the jury to convict Frias if it found that

Frias caused his sexual organ to penetrate K.N.'s anus.   Likewise, the jury charge instructed the

4

jury to convict Frias for aggravated kidnapping as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of January, 2012, in El Paso County, Texas, the defendant, **PHILLIP FRIAS**, did then and there intentionally or knowingly abduct another person, **K.N.**, hereinafter referred to as Complainant, by secreting and holding Complainant in a place where Complainant was not likely to be found, to-wit: an automobile, with the intent to violate and abuse sexually the Complainant, then you will find the defendant, **PHILLIP FRIAS**, GUILTY of KIDNAPPING, as alleged in Count III of the indictment . . . .

While the jury charge contained a section with legal definitions of terms applicable to the case, it did not contain a definition for "without consent;" instead, the definitions section of the jury charge stated only that as it pertained to the aggravated kidnapping charge, "[r]estraint is 'without consent' if it is accomplished by force, intimidation, or deception."   Neither party objected to the omission of the definition of "without consent" in the jury charge.

After the trial court read the jury charge, the parties proceeded with closing statements. During the defense's closing statement, defense counsel argued that the State did not meet its burden of proof and presented the theory that K.N. was lying about the sexual assault, pointing to inconsistencies in K.N.'s testimony as support.   He also alluded to the possibility that K.N. entered Frias's vehicle voluntarily.   Near the end of his closing statement, counsel attempted to argue that the issue in the case "[wasn't] so much the DNA.   The issue is how did this admittedly sort of sexual encounter take place, was it really a rape or was it merely a sexual encounter—perhaps it went wrong or somebody—[.]"   At this point the State objected, contending that the defense was alluding to facts not in evidence.   The trial court sustained the objection, and defense counsel's closing statement ended shortly thereafter.

The jury convicted Frias of both counts of aggravated sexual assault and one count of aggravated kidnapping, and sentenced him to life sentences for each of the offenses.   Frias

subsequently filed a motion for new trial on the basis of ineffective assistance of counsel, which the trial court granted. This Court abated Frias's timely filed direct appeal pending the resolution of the State's appeal of the trial court's grant of a new trial. We reversed the trial court's order granting Frias a new trial and reinstated his conviction in *State v. Frias*, 511 S.W.3d 797 (Tex. App.—El Paso 2016, pet. ref'd). We then reinstated Frias's direct appeal, which we now consider.

## DISCUSSION

Frias appeals his conviction in four issues. In his first and second issues, he argues that the trial court's jury charge was erroneous, and that the erroneous charge egregiously harmed him because the charge's language regarding Counts One and Two failed to require a unanimous finding that Frias "compelled K.N. to submit or participate" by failing to include the statutory definition of "without consent," which is an essential element of the offense of aggravated sexual assault. In his third and fourth issues, Frias argues the trial court violated his constitutional right to assistance of counsel by preventing his trial counsel from arguing during closing statements that K.N. had consented to her sexual encounter with Frias.

### Jury Charge Error

A trial court must charge the jury on the law applicable to the case, which requires the jury to be instructed on each element of the offenses charged, including statutory definitions which affect the meaning of the elements of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Ouellette v. State*, 353 S.W.3d 868, 870 (Tex. Crim. App. 2011). Appellate review of a jury charge error involves a two-step process. *Green v. State*, No. 08-13-00308-CR, 2015 WL 2265084, at *3 (Tex. App.—El Paso May 13, 2015, pet. ref'd) (not designated for publication)

6

(citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)). First, we must determine whether error in the jury charge occurred; second, if error occurred, we must determine whether sufficient harm resulted so as to require reversal. *Id.* (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

### Does error exist?

Here, Frias was charged with aggravated sexual assault. A person commits sexual assault if the person (1) intentionally or knowingly (2) causes (3) the penetration of the anus or sexual organ of another person by any means, (4) without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A). As it pertains to this case, a person commits aggravated sexual assault where, in addition to establishing the elements laid out in Section 22.011(a)(1)(A), the person by acts or words places the victim in fear that death will be imminently inflicted on any person, or if the person by acts or words occurring in the presence of the victim threatens to cause the death of any person. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(A)(ii)(iii), 22.021(a)(2)(A)(ii)(iii). As applicable here, the offense occurs without the victim's consent if, *inter alia*, "the actor compels the other person to submit or participate by the use of physical force, violence, or coercion[.]" *See* TEX. PENAL CODE ANN. §§ 22.021(c), 22.011(b)(1).

On appeal, Frias argues that the charge contained error because it did not provide the jury with a statutory definition for "without the consent" pursuant to Sections 22.021(c) and 22.011(b)(1). In particular, he contends the jury could not convict him of aggravated sexual assault because it was not instructed that penetration is without consent if the actor compels the other person to submit or participate by the use of physical force or violence. The State appears to

7

concede that the trial court erred in failing to instruct the jury on the applicable definitions of "without consent" because it does not argue that no error occurred. Instead, the State argues that even if the charge was erroneous, the absence of the statutory definitions did not cause egregious harm to Frias.

Upon review of the trial court's charge to the jury, we agree with Frias that the jury charge failed to set forth the law applicable to the case because the charge did not include the statutory bases under which the jury could find the element of lack of consent required of the offense. Thus, the charge was erroneous. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Ouellette*, 353 S.W.3d at 870 ("[t]rial courts are obliged to instruct juries on 'the law applicable to the case,' which includes the statutory definitions that affect the meaning of the elements of the offense") (citing *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009)); *Medrano v. State*, No. 13-15-00120-CR, 2016 WL 4578927, at *4 (Tex. App.—Corpus Christi Sep. 2, 2016), *writ granted on other grounds*, *Ex parte Medrano*, No. WR-87,182-01, 2018 WL 2438392 (Tex. Crim. App. Apr. 11, 2018) (not designated for publication) (finding trial court's jury charge contained error for lack of statutory definition of "without consent" element of aggravated sexual assault).

### Does egregious harm exist?

Having determined that the jury charge contained error, we must consider whether a sufficient degree of harm resulted so as to require reversal. *Green*, 2015 WL 2265084, at *4 (citing *Wooten*, 400 S.W.3d at 606). Under this second prong, we first determine if the defendant properly preserved the error by objecting to the charge at trial. *Id*. (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). Where, as here, the defendant failed to object to non-constitutional error in the charge, reversal is required only if we find "egregious harm," such that

8

the error was so harmful that the defendant did not have a fair and impartial trial. *Id.* (citing *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009)); *see Lovings v. State*, 376 S.W.3d 328, 338 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying non-constitutional error standard to jury charge's omission of a statutory definition for "without consent" element of aggravated sexual assault). An egregious harm analysis is based on a finding of actual, rather than theoretical, harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). Actual harm is established when the erroneous jury charge affected "the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory." *Id.* (internal quotations omitted). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

We look to four factors laid out in *Almanza*, 686 S.W.2d at 171, to determine whether a defendant was egregiously harmed by an erroneous jury charge, considering: (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Id.* We now address each *Almanza* factor in turn.

*The Jury Charge*

The jury charge shows that the jury was properly instructed in the abstract paragraph that in order to convict Frias of aggravated sexual assault, it must find the sexual act charged was "without that person's consent;" this language was essentially duplicated in the jury charge's application paragraphs, such that it required the jury to find Frias engaged in the sexual act "without the consent of **K.N.**" Although "without consent" was not defined in the jury charge, both the abstract and application paragraphs nonetheless included all the statutory elements of the

9

offense, and the latter required the jury to find each element beyond a reasonable doubt; as such, the jury charge was not fundamentally defective. *See Lovings*, 376 S.W.3d at 338 (citing *Rohlfing v. State*, 612 S.W.2d 598, 602–03 (Tex. Crim. App. [Panel Op.] 1981) (absence of definition was harmless error because the element was not omitted from the charge and the charge did not authorize conviction without finding all elements of the offense)).

Nevertheless, courts have held that when a statutory definition of a term is not included in a jury charge, it is assumed that the jury would consider the "commonly understood meaning in its deliberations." *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983); *Lovings* 376 S.W.3d at 338. The dictionary defines "consent" as "permission, approval, or assent" and gives the example, "to willingly engage in a sexual act." *Lovings*, 376 S.W.3d at 338 (citing WEBSTER'S NEW WORLD COLLEGE DICTIONARY 310 (4th ed. 2001)). As such, engaging in a sexual act "without consent" would be commonly understood to mean doing so unwillingly. *See id.*; *Medrano*, 2016 WL 4578927, at \*4.

In this case, the relevant statutory circumstances in which a sexual act is deemed nonconsensual occurs when "the actor compels the other person to submit or participate by the use of physical force, violence, or coercion[.]" TEX. PENAL CODE ANN. §§ 22.021(c), 22.011(b)(1). Other Texas courts of appeals have concluded that this statutory definition does not defy the common-sense understanding of what it means to obtain something without the consent of another person and further found that the common-sense understanding of what it means to not consent closely resembles the statutory definition of "without consent;" as such, these courts concluded that the omitted statutory definition was not necessary to correct or complete the jury's understanding of this essential element of the offense. *See, e.g., Lovings*, 376 S.W.3d at 338

10

(finding statutory definitions under Section 22.011(b)(1) and (2) did not defy the common-sense understanding of what it means to engage in a sex act "without consent"); *Medrano*, 2016 WL 4578927, at *4 (finding the same under Sections 22.011(b)(1) and (3)).

We agree with our sister courts that the statutory definition of "without consent" enumerated in Section 22.011(b)(1) does not defy the common-sense understanding of what it means to obtain something without the consent of another person. *See Lovings*, 376 S.W.3d at 338; *Medrano*, 2016 WL 4578927, at *4. Stated differently, it is common sense that a person has not consented to a sexual act if that person's submission to the act was compelled by the actor through the use of physical force or violence. Since the common-sense understanding of "without consent" closely resembles the statutory definition of that phrase, we find that the statutory definition was not necessary to correct or complete the jury's understanding of the "without consent" element of aggravated sexual assault. *See Lovings*, 376 S.W.3d at 338; *Medrano*, 2016 WL 4578927, at *4. Further, the jury was instructed that it could not find Frias guilty of aggravated sexual assault unless it found beyond a reasonable doubt that he engaged in a sexual act with K.N. without her consent; as such, this factor weighs against egregious error. *See Lovings*, 376 S.W.3d at 338; *Medrano*, 2016 WL 4578927, at *4; *see also Green*, 2015 WL 2265084, at *4 (existence of language in the jury charge requiring proof of the elements of the offense beyond a reasonable doubt weighs against finding of egregious error).

*State of the Evidence*

Next, we consider the state of the evidence, including the contested issues and the weight of probative evidence presented at trial. *Green*, 2015 WL 2265084, at *4 (citing *Ngo v. State*, 175 S.W.3d 738, 751–52 (Tex. Crim. App. 2005)); *Lovings*, 376 S.W.3d at 337. At trial, K.N.

11

testified that, even though she had rejected an offer of a ride, Frias grabbed her by her neck and forced her into his vehicle. She also described that he committed sexual assault by overpowering her with the use of physical force and violence and continued making additional threats against her. K.N. testified that he pushed her into the backseat, choked her, took her clothes off, penetrated her, threatened to kill her and to have the men outside the vehicle join in the ongoing sexual act, fell asleep on top of her at the conclusion of the first assault, and then woke up and penetrated her again without her consent. During the second sexual assault, K.N. testified that she attempted to fight back against Frias by choking him as he was choking her. When Frias told her that if she did not stop attempting to choke him, he was going to hit her, K.N. stated she "just stopped . . . [because she] just wanted it to be over."

Frias argues that certain inconsistencies in K.N.'s testimony at trial, such as her recollection of details about the passenger-side door of Frias's vehicle, and how she was forced into the car and exited from it, rendered her testimony implausible. He contends that these inconsistencies raised a fact question as to whether Frias actually compelled K.N.'s submission to, or participation in, sexual relations with him. He also claims that the evidence supported an inference that K.N. fabricated her version of events, and that it was possible she had engaged in consensual sex with Frias, perhaps in exchange for a ride home, or that she fabricated the story to avoid conflict with her mother.

At trial, Frias's attorney remarked in his opening and argued in his closing that K.N. had consented to the sexual encounter with Frias. Irrespective of these statements, our review of the record shows that Frias did not fairly raise the issue of whether K.N. consented to the sexual encounter with presentment of actual evidence. No witness testified directly or indirectly that

12

K.N. consented to the sexual encounter with Frias, and the record is bereft of evidence reasonably supporting any such inference. As the State points out, a fact issue is raised by affirmative evidence, and not by cross-examination, arguments, or insinuations by counsel; as such, Frias's contention that K.N. *could* have consented to the sexual encounter with him, without evidence supporting that notion, is insufficient to create a factual dispute. *See Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *see also Moore v. State*, No. 01-94-01225-CR, 1995 WL 623028, at *1–2 (Tex. App.—Houston [1st Dist.] Oct. 19, 1995, pet. ref'd) (not designated for publication) (in a sexual assault case, egregious harm resulting from omission of statutory definition of "without consent" cannot exist when the issue is not raised by the evidence in the record).

On the contrary, in addition to K.N.'s testimony supporting the State's theory that she did not consent to the encounter, other affirmative evidence supported her testimony. For example, several witnesses including her mother, the responding officer, and the SANE nurse who performed a physical examination, described having witnessed marks on her neck and swelling on her face which K.N. testified she sustained because of Frias's use of physical force during the incident. As such, we cannot see how the evidence presented at trial created any meaningful fact issue regarding K.N.'s consent (or lack thereof), and when combined with evidence tending to support the absence of K.N.'s consent, this factor weighs against a finding of egregious harm. *See Oursbourn*, 259 S.W.3d at 177; *see also Moore*, 1995 WL 623028, at *1–2.

### The Parties' Arguments

Under this factor, we consider whether any statements made by the State, the defense, or the trial court exacerbated or ameliorated the error in the jury charge. *Green*, 2015 WL 2265084,

13

at *5 (citing *Ngo*, 175 S.W.3d at 750). This case involved a scenario in which the State and Frias disagreed about whether K.N. was being truthful about the alleged sexual assault, and in which Frias attacked K.N.'s credibility by pointing out certain inconsistencies in her testimony during his closing argument. Further, while Frias's counsel alluded to the possibility that K.N. had consented to entering Frias's vehicle during his closing, nonetheless, the primary focus of his argument was not that K.N. consented to the encounter, but rather, that the State did not meet its burden of proof on the statutory elements as K.N.'s testimony was not credible. As such, it was unlikely that the jury charge error affected Frias's defensive theory asserting that K.N. was being dishonest about what had happened during the sexual encounter, and this factor weighs against a finding of egregious harm. *See Lovings*, 376 S.W.3d at 338–39 (inclusion of the statutory definition of "without consent" would not have assisted the jury in resolving any issues regarding the complainant's credibility because she testified to the same conduct described in the statutory definitions); *Medrano*, 2016 WL 4578927, at *5 (concluding that omitting the relevant statutory definition of non-consent from the jury charge did not affect defensive theory that victim was not being truthful about a sexual encounter with the defendant). Likewise, the State explained in its voir dire examination to the jurors that "[w]ithout consent, under the law and under caselaw, it's by the use of physical force or violence . . . . That's what without consent means." This statement by the prosecutor was a correct statement of law as it pertained to this case, which renders the error in the jury charge less likely to have resulted in egregious harm. *See Medrano*, 2016 WL 4578927, at *5; *Perez v. State*, No. 08-10-00075-CR, 2011 WL 6317519, at *7–8 (Tex. App.—El Paso Dec. 15, 2011, no pet.) (not designated for publication) (egregious harm is less likely where the State and trial court did not make comments to the jury which would tend to increase the

14

likelihood of misapplication of the applicable law, and where the State made comments amounting to a correct application of law to facts).

*Other Considerations*

Finally, we should also consider the severity of the punishment assessed, which may indicate egregious harm in some situations. *Martinez v. State*, No. 08-11-00311-CR, 2013 WL 241815, at *6–7 (Tex. App.—El Paso Jan. 23, 2013, pet. ref'd) (not designated for publication) (citing *Martinez v. State*, 313 S.W.3d 358, 369 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). Here, Frias received life sentences for each count of aggravated sexual assault, which is the maximum punishment for a first-degree felony. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 22.021(e). Nevertheless, a maximum sentence alone does not indicate egregious harm. *See Martinez*, 2013 WL 241815, at *6–7 (citing *Martinez*, 313 S.W.3d at 369).

Based on our application of the *Almanza* factors to this case, we conclude that the jury charge's omission of the relevant statutory definition of "without consent" did not deprive Frias of a valuable right or vitally affect his defensive theory. *See Medrano*, 2016 WL 4578927, at *5 (citing *Ngo*, 175 S.W.3d at 743 –44); *Lovings*, 376 S.W.3d at 338–39. As such, the jury charge error did not cause Frias to suffer harm so egregious that he did not have a fair and impartial trial. *See Cosio*, 353 S.W.3d at 777; *Lovings*, 376 S.W.3d at 338–39; *Medrano*, 2016 WL 4578927, at *5. Frias's first and second issues are overruled.

**Jury Argument**

In his third and fourth issues, Frias argues that the trial court erred by sustaining the State's objection to his trial counsel's jury argument, which he contends denied him the constitutional right to effective counsel.

15

During his closing statement, defense counsel argued that (1) the State did not meet its burden of proof; (2) that one of the samples collected from K.N.'s body was not tested and could have yielded DNA belonging to her friend who she had had sex with prior to the encounter with Frias; and (3) that the evidence called into question the truthfulness of K.N.'s testimony regarding the sexual encounter. Near the end of his closing statement, defense counsel attempted to argue that the issue in the case:

> [Wasn't] so much the DNA. The issue is how did this admittedly sort of sexual encounter take place, was it really a rape or was it merely a sexual encounter— perhaps it went wrong or somebody—

At this point the State objected, contending that defense counsel was alluding to facts not in evidence. The trial court sustained the objection, and defense counsel's closing statement ended shortly thereafter.

As a preliminary matter, we address the State's argument that because Frias's trial counsel did not demonstrate what he would have argued in his closing statement had the trial court not sustained the State's objection, he has not preserved his issue for appellate review. We agree. Where the record does not fully demonstrate to the court what counsel would have argued but for an objection, and a party did not make an objection to the trial court's ruling, no demonstration of harmful error is made, and the issue is not preserved for appellate review. *Price v. State*, 870 S.W.2d 205, 209 (Tex. App.—Fort Worth 1994), *aff'd*, 887 S.W.2d 949 (Tex. Crim. App. 1994) (citing *Dean v. State*, 481 S.W.2d 903, 904 (Tex. Crim. App. 1972)); *Uyamadu v. State,* 359 S.W.3d 753, 768 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Barragan v. State*, 641 S.W.2d 380, 382 (Tex. App.—El Paso 1982, no pet.). Here, Frias's trial counsel did not make a bill of review or otherwise explain what he would have argued but for the trial court's ruling; as

16

such, we conclude he has not preserved this issue for our review.

Even if we were to review Frias's argument on appeal, we find that he has not established a violation of his right to counsel based on the trial court's ruling. Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent counsel from making a point essential to the defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.). As such, the improper denial of a jury argument may constitute a denial of the right to counsel, but only if the argument is one that a defendant is permitted to make. *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010). Proper jury arguments are (1) summations of the evidence; (2) reasonable inferences from the evidence; (3) pleas for law enforcement; and (4) answers to arguments of opposing counsel. *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007).

We find that defense counsel's argument that K.N. possibly consented to the sexual encounter with Frias does not properly fall into any of these categories. The argument was not a proper summation of the evidence or a reasonable inference from the evidence because, as explained above, the issue of whether K.N. consented to the sexual encounter with Frias was not raised by the evidence. The record is bereft of witness testimony or other evidence suggesting that K.N. consented, and thus defense counsel's argument suggesting otherwise invited speculation and was not a proper summation of the evidence or a reasonable inference from the evidence. *See Bailon v. State*, No. 05-09-01021-CR, 2011 WL 667981, at *2 (Tex. App.—Dallas Feb. 25, 2011, no pet.) (mem. op., not designated for publication) (trial court did not err in denying defense counsel's jury argument based on speculation, and not on the evidence or a reasonable inference from the evidence). Neither was defense counsel's argument a plea for law enforcement or a valid

answer, grounded in the evidence, to the State's argument that K.N. did not consent. Since the trial court properly sustained the State's objection to defense counsel's improper argument, he was not prevented from making a valid jury argument, and Frias's issue must fail for this reason alone. *See id.*; *Davis*, 329 S.W.3d at 825; *Berry*, 233 S.W.3d at 859.

Even if the trial court erred in denying defense counsel's argument regarding K.N.'s purported lack of consent, we note that Frias was not entirely precluded from making this argument during his closing statements. Prior to the argument at issue, defense counsel rhetorically asked, without objection from the State, whether it was "possible that [Frias] invited somebody into the car and they got into the car," with "somebody" obviously referring to K.N. As such, we cannot say that Frias was entirely precluded from presenting the defensive theory that K.N. consented to the sexual encounter, and he has not demonstrated that he was denied the right to assistance of counsel. *See Davis*, 329 S.W.3d at 824–25 (defendant was not denied right to assistance of counsel where he was ultimately allowed to make his desired argument to the jury). Frias's third and fourth issues are overruled.

## CONCLUSION

We affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

January 4, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

18