**Opinion filed February 13, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00270-CR

_____

## JAVON DAVONTAE ELLISTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR57779**

## M E M O R A N D U M   O P I N I O N

Appellant, Javon Davontae Elliston, was indicted for the offenses of murder, tampering with physical evidence (a human corpse), and tampering with physical evidence (items). *See* TEX. PENAL CODE ANN. §§ 19.02, 37.09 (West Supp. 2024). The jury convicted Appellant of each charged offense, found the enhancement allegation to be "true," and assessed Appellant's punishment at (1) life imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a

$10,000 fine for both the offense of murder and the offense of tampering with physical evidence (a human corpse) and (2) twenty years' imprisonment and a $10,000 fine for the offense of tampering with physical evidence. The trial court sentenced him accordingly.

Appellant argues on appeal that (1) the trial court erroneously defined the terms "intentionally" and "knowingly" in its charge, and (2) the evidence is insufficient to support each of his convictions. We affirm.

## I. *Factual Background*

On February 5, 2022, at approximately 11:00 p.m., David Demick checked into the Wyndham Garden Hotel in Midland and was assigned Room 240. Video surveillance from the hotel showed that Demick was at the hotel bar and returned to his room in the early morning hours of February 6.

Ana Esquivel and Alexandria Flores were staying at the same hotel that night in the room next to Demick; their room had an adjoining door to Demick's room. Esquivel testified that in the early morning hours, she heard arguing and fighting in the adjoining room. Esquivel described hearing "slapping" and "smacking" sounds and then someone screaming for his life. Esquivel was able to detect two distinct voices coming from the room. Esquivel called the hotel front desk and asked them to call the police. Before hotel staff arrived, Esquivel heard someone in the adjoining room repeatedly yelling for help. Esquivel then heard another person say, "You're going to die today, m----------r." According to Esquivel, it was silent for about ten minutes, and then she heard someone knock on the door of the adjoining room. She said initially no one answered, but then she heard someone say, "we're all right." Esquivel did not hear anyone leave the adjoining room at that time, but around 5:00 a.m., she heard the door slam.

2

Flores testified that she was awakened by noises coming from the adjoining room. Flores heard banging noises, and a man said, "He's going to kill me." She then heard another voice say, "You're going to die tonight." Flores heard what sounded like choking noises coming from the room. When leaving her room later that morning, Flores saw a body lying on the floor by the bed in the adjoining room.

Elian Gonzalez was working at the hotel front desk on February 6, and he received a call from a guest room concerning the room next door. Gonzalez locked up the front desk area and went to that room. Gonzalez knocked on the door of the room and stated that he was from the front desk. After knocking several times without an answer, Gonzalez was about to leave when he heard someone say, "I'm naked, don't come in." Gonzalez left without seeing any occupants of the room.

The hotel housekeeping supervisor testified that there was a bundle of sheets outside of Room 240 on the morning of February 6. When she entered the room, she saw a man who appeared to have had too much to drink lying faceup on the floor. When the man would not respond, the housekeeping supervisor called her manager for assistance.

Midland Police Officer Christopher Orona was dispatched to the hotel at 11:39 a.m. Hotel personnel escorted him to Room 240 where he observed a male subject lying on the floor between the door and the bed. EMS arrived on the scene and declared that the male subject was deceased. Officer Orona described the scene as "very odd" and did not seem "natural" because there were no personal effects in the room other than a pair of boots placed neatly above the deceased's head. The deceased was unclothed and covered with a decorative bedding. Officer Orona identified the deceased as Demick.

Detective Dustin Juergens was also dispatched to the hotel, and he reviewed hotel surveillance videos. At trial, the hotel surveillance videos were played for the

3

jury. Detective Juergens explained what was depicted in the videos. Detective Juergens identified Demick in the videos as wearing a black jacket and jeans. Detective Juergens then identified a person in the video as the suspect. Detective Juergens described the suspect as wearing a beanie and continually hanging out in the hotel lobby. Detective Juergens stated that he tracked the suspect's movements inside of the hotel on the videos and observed him for over an hour. Detective Juergens explained that one needed a hotel key card to enter the guest room area of the hotel. Sometime after 1:00 a.m., the suspect is shown at the door leading to the guest rooms and was able to grab the door to the guest rooms before it closed. The suspect does not appear in the lobby area after that.

Detective Juergens testified that the suspect can be seen in the second-floor hallway at 1:20 a.m. Detective Jeurgens observed Demick enter Room 240 at 2:05 a.m., and then at 2:06 a.m., the suspect was standing outside of the door to Room 240. Detective Juergens testified that it looked like the suspect "had balled his fist up like he was punching someone or something" and then it appeared that he entered Room 240. Detective Juergens testified that at 5:50 a.m., the suspect exits Room 240 wearing Demick's jacket and carrying a bundle of bed sheets. The suspect is then seen leaving the hotel at 5:51 a.m.

Detective Juergens was able to obtain still photographs of the suspect from the surveillance video, which were posted on Crime Stoppers' social media. Madison Johnson, Appellant's former girlfriend, recognized Appellant from the Crime Stoppers' social media post by the tattoos on his neck and a chain he was wearing. Johnson called Crime Stoppers and eventually met with police. Johnson was able to identify Appellant in the police photographs, and she provided the police with photographs that she had of Appellant. After Johnson identified Appellant, Detective Juergens obtained an arrest warrant for him. At trial, Johnson was shown

4

the photographs taken from the hotel surveillance videos, and she testified unequivocally that Appellant was the person in the photographs.

Dakota Webster testified that on February 7, Appellant asked her for a ride to Johnson's house to retrieve his belongings and to go get his phone repaired. When Webster picked up Appellant from the Super 8 Motel in Midland, he asked her to take him to Dallas, but Webster refused. After driving Appellant to Johnson's to get his belongings, Webster was stopped by the police. As she was getting pulled over, Appellant told Webster, "B, you set me up." The police then removed Appellant from Webster's vehicle. At trial, Webster viewed the photographs from the hotel surveillance videos and identified Appellant as the person in the photographs.

Rick Moore testified that he arrived at his construction jobsite early in the morning on February 8. He cleaned up around the location and took trash to the dumpster. When he opened the door to the dumpster, he saw personal items belonging to Demick such as his driver's license and credit cards. Moore knew Demick because he had previously worked for Moore. Moore tried to call Demick, but there was no answer. Moore then called the owner of a bar that Demick frequented to try and locate him. The bar owner told Moore that he needed to speak to a detective. Moore stated that about ten minutes later, the police arrived at the jobsite and collected the items from the dumpster.

Appellant testified at trial that he was not at the Wyndham Garden Hotel on the night of February 5. Appellant said that he was at "home" and had stayed there all night. According to Appellant, on the morning of February 6, he and a friend went to breakfast. Later that day, Appellant got a room at the Super 8 Motel because there was no water at "home," and he needed to shower. He said that he stayed at the motel that night. Appellant testified that he does not know Demick and that he had nothing to do with Demick's death.

## II. *Sufficiency of the Evidence*

In his second issue, Appellant argues that the evidence is insufficient to support his convictions for murder, tampering with physical evidence (a human corpse), and tampering with physical evidence (items).

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*,

6

443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

B. *Analysis*

1. *Murder*

Appellant first challenges the sufficiency of the evidence to support his conviction for murder. Specifically, Appellant contends that evidence of identity is lacking and does not support the jury's finding of guilt.

As charged in this case, a person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual or if he (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. PENAL § 19.02(b)(1), (2). Identity is an essential element of any criminal offense; the State must prove beyond a reasonable doubt that the defendant is the person who committed, or was a participant in the commission of, the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex.

7

Crim. App. 1984); *see Ruiz v. State*, 631 S.W.3d 841, 850–52 (Tex. App.—Eastland 2021, pet. ref'd) (identity is an essential element of murder that must be proved beyond a reasonable doubt).

Appellant argues that there is no evidence that places him at the scene of the murder. The jury viewed the hotel surveillance video and the still photographs taken from the video. Johnson and Webster testified unequivocally that the suspect in the still photographs was Appellant. Appellant contends that the hotel surveillance video is "less than proof beyond a reasonable doubt" and does not provide any clear evidence that he entered Demick's room and caused his death. However, the hotel surveillance video shows Demick enter his hotel room at 2:05 a.m. and then a person identified as Appellant, forcefully enter Demick's room at 2:08 a.m.

Esquivel and Flores testified that they heard fighting in the room that adjoined their room in the early morning hours and a man screaming for his life. Esquivel heard slapping and smacking noises and then a male voice said, "You're going to die today, m----------r." Flores also heard choking sounds coming from the room. The medical examiner testified that Demick suffered blunt force injuries with the possibility of asphyxia.

Appellant was seen leaving Demick's room at 5:50 that morning wearing Demick's jacket and carrying a bundle of bedsheets. None of Demick's personal belongings were found in his hotel room other than a pair of boots, and all of the bed sheets were removed from Demick's hotel room.

Evidence was presented to the jury that placed Appellant in Demick's hotel room in the early morning hours of February 6 when Esquival and Flores heard a man screaming for his life. No other suspect was identified entering Demick's room on the hotel surveillance video. The jury, as in all cases, was free to judge the credibility and weight of all the evidence presented, including Appellant's

8

testimony. *See Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Considering the foregoing evidence, we conclude that a rational jury could have logically inferred and found beyond a reasonable doubt that the cumulative force and effect of this evidence, as well as all other evidence presented at trial, circumstantial or otherwise, was sufficient to find that Appellant was the person who murdered Demick. *See Villa*, 514 S.W.3d at 232; *Murray*, 457 S.W.3d at 448; *Hooper*, 214 S.W.3d at 13.

## 2. *Tampering with Physical Evidence (A Human Corpse)*

Appellant next argues that the evidence was insufficient to support his conviction for tampering with a human corpse. As charged in this case, a person commits an offense if, "knowing that an offense has been committed, [he] alters, destroys, or conceals any . . . thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense." PENAL § 37.09(d)(1). To convict a defendant of this offense, the State must prove beyond a reasonable doubt the following three elements: the defendant (1) knew an offense had been committed; (2) concealed, altered, or destroyed a thing; and (3) intended to impair the availability of that thing as evidence in any subsequent investigation of or official proceeding related to the offense. *See* PENAL § 37.09(d)(1); *Stahmann v. State*, 602 S.W.3d 573, 577, 581 (Tex. Crim. App. 2020).

Although Section 37.09 does not define the term "conceal," the Court of Criminal Appeals has stated that "[a]n item is concealed if it is 'hidden, removed from sight or notice, or kept from discovery or observation.'" *McPherson v. State*, 677 S.W.3d 663, 665 (Tex. Crim. App. 2023) (quoting *Stahmann*, 602 S.W.3d at 581). "The word 'alter' must be interpreted according to its common usage because it is not statutorily defined." *Stahmann*, 602 S.W.3d at 578. "[I]n its common usage

9

'alter' means that the defendant changed or modified the thing itself." *Id.* at 579. A person acts with the intention to impair the availability of the evidence in a subsequent investigation or proceeding that is related to the charged offense when it is the person's conscious objective or desire to impair the availability of the evidence. *See* PENAL § 6.03(a) (West 2021). The focus of this element is only whether Appellant *intended* to impair the availability of the evidence—Demick's body—by concealing it; it is not an element of the offense that concealment actually impairs the availability of the evidence. *See* PENAL § 37.09(d)(1); *Carnley v. State*, 366 S.W.3d 830, 835 (Tex. App.—Fort Worth 2012, pet. ref'd); *Lewis v. State*, 56 S.W.3d 617, 625 (Tex. App.—Texarkana 2001, no pet.).

Appellant contends that Demick's body was not truly concealed because it was partially covered with the decorative bedding and there is no evidence that anyone attempted to conceal Demick's body. The evidence shows that Demick entered his hotel room fully clothed in the early morning hours of February 6. After that, no one other than Appellant was seen entering Demick's room. Neighboring guests heard fighting and a man screaming for his life in Demick's room after Appellant was seen entering it. Appellant was seen leaving Demick's room later that morning wearing Demick's jacket and carrying a bundle of bed sheets. Demick's body was later found on the floor of his hotel room between the bed and the door completely nude and covered by a piece of decorative bedding from the hotel.

Here, the jury could have reasonably inferred that knowing a crime had been committed, Appellant removed Demick's clothing, placed his body on the floor, and covered his body with the decorative bedding thereby altering or concealing the body to impede the identity and discovery of the body and the investigation and proof of Appellant's crime. Viewing the evidence in the light most favorable to the jury's

10

verdict, we conclude that sufficient evidence exists from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant knew that an offense had been committed, that he altered or concealed the body, and that he did so intending to impair the availability of the body as evidence in a subsequent investigation of or proceeding related to the underlying offense.

### 3. *Tampering with Physical Evidence (Items)*

Appellant also argues that the evidence is insufficient to support his other conviction for tampering with physical evidence. The indictment alleged that Appellant committed the offense of tampering with physical evidence by altering, destroying, or concealing sheets, a jacket, clothing, a hotel key, and credit and debit cards and other means of identification belonging to Demick. The jury was charged in accordance with the indictment. Appellant specifically argues that the evidence is insufficient because at the time of his arrest, he did not have any property on his person that could be connected to Demick and because there was no evidence that placed him at the location where Demick's property was recovered.

As previously stated, Appellant was seen entering Demick's room in the early morning hours of February 6. Neighboring guests heard fighting in Demick's room and a man screaming for his life. Appellant was seen leaving Demick's room later that morning wearing Demick's jacket and carrying bed sheets. No one else was seen entering or leaving Demick's room. Demick entered his room fully clothed, but his body was later found without any clothing and none of his personal belongings were in the room except a pair of boots. Considering the foregoing evidence, we conclude that a rational jury could have logically inferred and found beyond a reasonable doubt that the cumulative force and effect of this evidence, as well as all other evidence presented at trial, circumstantial or otherwise, was sufficient to find that Appellant knew that an offense had been committed and that

11

he altered, concealed, or destroyed bedsheets, Demick's clothing, and Demick's personal belongings with the intent to impair its availability as evidence. *See* PENAL § 37.09(d)(1); *see also Villa*, 514 S.W.3d at 232; *Murray*, 457 S.W.3d at 448; *Hooper*, 214 S.W.3d at 13.

In sum, viewing the evidence in the light most favorable to the jury's verdicts, we conclude that the State adduced sufficient evidence from which a rational trier of fact could have logically inferred and found beyond a reasonable doubt that Appellant committed the offenses of murder, tampering with physical evidence (a human corpse), and tampering with physical evidence (items) as charged in the indictment. Accordingly, because sufficient evidence supports Appellant's convictions for the charged offenses, we overrule Appellant's second issue.

### III. *Culpable Mental State Definitions*

Appellant argues in his first issue that the trial court erred when it included in its charge (1) a definition of intentionally that added the phrase "with respect to the nature of his conduct," rather than defining intentionally only as a "result of conduct offense" as required by Section 6.03(a) of the Penal Code, and (2) an incorrect and overbroad definition of "knowingly." The focus of Appellant's argument on this point is whether the complained-of error only affected the jury's ability to find him guilty of murder.

The Penal Code prescribes four culpable mental states—intentionally, knowingly, recklessly, and criminally negligent—and three possible conduct elements—nature of the conduct, result of the conduct, and circumstances surrounding the conduct. PENAL § 6.03; *see Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). When unspecified conduct is criminalized because of its result, the culpable mental state must be applied to that result. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). An offense may contain any one or more

12

of these conduct elements that alone or in combination form the overall behavior that the legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs if it fails to limit in its charge the language of the applicable culpable mental state to the appropriate conduct element. *Price*, 457 S.W.3d at 441; *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

"Intentional murder is a result-of-conduct offense." *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022); *Cook*, 884 S.W.2d at 491. The State concedes that the abstract portion of the charge contained the complete statutory definitions for intentionally and knowingly without limiting the definitions to a result of conduct offense, as it should. Therefore, because the mental states as defined in the trial court's charge were not properly limited to the applicable "result of conduct" definition, the trial court erred.

## IV. *Charge Error*

### A. *Standard of Review*

Reviewing complaints of charge error is a two-step process. *Campbell*, 664 S.W.3d at 245 (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Harm Analysis*

There is no dispute that Appellant's trial counsel did not object to the definitions of intentionally and knowingly as they were submitted in the trial court's charge. Therefore, we review the complained-of charge error under the *Almanza* "egregious harm" standard. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under this standard, when, as in this case, the defendant or his trial counsel fail to assert proper objections to the trial court's charge or fail to request and present a proper jury instruction, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

14

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Further, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

### C. *The Almanza Factors*

In *Almanza*, the Court of Criminal Appeals identified the factors that a reviewing court should consider when determining whether the complained-of charge error resulted in egregious harm. 686 S.W.2d at 171. They are: (1) the charge itself; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *Cosio*, 353 S.W.3d at 777 (citing *Hutch*, 922 S.W.2d at 171). These factors guide our analysis.[1] *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

### 1. *The Charge as a Whole*

The Court of Criminal Appeals has held that, "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also*

---

[1]We note that Appellant does not separately address the *Almanza* factors and to what extent, if any, these factors would support a finding of egregious harm. Rather, Appellant only contends, globally, that he suffered egregious harm because of the error and was denied a fair trial. Appellant's trial counsel was not required to object to these definitional deficiencies to preserve error for our review.

*Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious.").

Here, the charge's application paragraph properly tracked the language of the indictment, the necessary statutory language, and the elements of murder. No harm results from the trial court's failure to limit the definitions of the culpable mental states in the abstract portion of its charge if the application paragraph correctly states, as it did in this case, the elements of the charged offense and directs the jury to the appropriate definitions. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296–97 (Tex. Crim. App. 1994) ("[W]hen [the terms 'intentionally' and 'knowingly'] are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."); *Price v. State*, No. 10-22-00047-CR, 2023 WL 4363066, at *3 (Tex. App.—Waco July 5, 2023, no pet.) (mem. op., not designated for publication) ("The extra result-of-conduct language in the abstract definitions was merely superfluous as it had no effect on the jury's ability to implement the application paragraph.").

Although the trial court's charge incorrectly included, in the abstract portion, definitions of intentionally and knowingly that added the phrase "with respect to the nature of his conduct," the application portion of the charge sufficiently tracked the language of the indictment and the statutory elements of the charged offense. We conclude that the charge when read in its entirety and in proper context does not weigh in favor of finding that Appellant suffered egregious harm. *See Medina*, 7 S.W.3d at 640.

16

### 2. *The Evidence Presented at Trial*

At trial, Appellant testified that he was not at the Wyndham Garden Hotel at the time of the offense and that he had nothing to do with Demick's death. He argues on appeal that the evidence is insufficient to support his conviction for murder contending that the primary issue throughout trial was the identity of the person who killed Demick. The evidence presented to the jury included hotel surveillance videos that showed a person identified as Appellant violently enter Demick's hotel room and testimony that neighboring guests heard a man scream for his life.

Neither at trial nor on appeal does Appellant argue that he lacked the requisite culpable mental state to commit the offense. Therefore, his mental state was not an issue at trial. Accordingly, the state of the evidence does not weigh in favor of finding that Appellant suffered egregious harm with respect to how the terms "intentionally" and "knowingly" were defined in the trial court's charge.

### 3. *The Arguments of Counsel*

The closing argument of Appellant's trial counsel focused primarily on the lack of evidence connecting Appellant to the offense. The State's argument referenced the elements of murder and noted "six of you can believe that no, he went in there to kill him, he intended to do it, it was a cold-blooded murder" and "six of you can think no, we think something else was going on . . . maybe he was going in there to rob him . . . he was trying to seriously injure him and he died because of it." The State also focused on the evidence that supported Appellant as the person who entered Demick's room and Appellant's credibility as a witness. Therefore, because Appellant's intent or knowledge was not a focus of counsels' arguments, and because no statements made by counsel exacerbated or ameliorated the charge error, *see Arrington*, 451 S.W.3d at 844, the third factor does not weigh in favor of a finding of egregious harm.

### 4. *Other Relevant Information*

The fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. Nothing in the record before us indicates that the jury was unable to render a correct verdict, consistent with the evidence presented, based on the trial court's erroneous definitions of "intentionally" and "knowingly." In fact, the record shows that, during its deliberations, the jury never inquired, submitted any note, or communicated to the trial court any confusion or concerns by them regarding the deficiencies in the charge to which Appellant now complains. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.); *Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd). Therefore, it is unlikely that the jury was influenced, confused, or misled by the trial court's instructions. Because the record does not demonstrate that the erroneous definitions affected or influenced the jury's ability to determine whether Appellant had the requisite intent or knowledge to commit the offense of murder, this factor does not weigh in favor of a finding of egregious harm.

### 5. *The Almanza Factors Considered Together*

We hold that the trial court erred when it failed to properly limit the applicable conduct element definitions in its charge. However, we conclude, as we have many times before, that Appellant did not suffer egregious harm resulting from the trial court's submitted definitions in the abstract portion of the charge such that he was deprived of a fair and impartial trial. *See, e.g.*, *Arevalo v. State*, 675 S.W.3d 833, 853–56 (Tex. App.—Eastland 2023, no pet.); *Gonzalez v. State*, No. 11-22-00117-CR, 2024 WL 2965154, at *4–6 (Tex. App.—Eastland June 13, 2024, no pet.)

(mem. op., not designated for publication); *Espinosa v. State*, No. 11-22-00100-CR, 2024 WL 1862786, at *8–11 (Tex. App.—Eastland Apr. 30, 2024, no pet.) (mem. op., not designated for publication); *Rice v. State*, No. 11-22-00032-CR, 2023 WL 5109158, at *4–6 (Tex. App.—Eastland Aug. 10, 2023, no pet.) (mem. op., not designated for publication); *Elizondo v. State*, No. 11-21-00173-CR, 2023 WL 2169968, at *2–4 (Tex. App.—Eastland Feb. 23, 2023, no pet.) (mem. op., not designated for publication); *Green v. State*, No. 11-21-00097-CR, 2023 WL 1825168, at *6–8 (Tex. App.—Eastland Feb. 9, 2023, no pet.) (mem. op., not designated for publication).

Accordingly, we overrule Appellant's first issue.

## V. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE


February 13, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.